[No. 3040–2.   Division Two.   October 24, 1978.]

PORT TOWNSEND SCHOOL DISTRICT NO. 50, ET AL,
*Respondents,* v. FRANK B. BROUILLET,
ET AL, *Appellants.*

*Slade Gorton, Attorney General,* and *Richard A. Finnigan, Assistant,* for appellants.

*Frank E. Morris,* for respondents.

SOULE, J.—Frank B. Brouillet, the State Superintendent of Public Instruction, has appealed the orders of the Thurston County Superior Court granting Port Townsend School District No. 50's application for writ of certiorari and motion for summary judgment. The State Superintendent raises two issues on appeal: (1) whether the Superior Court had jurisdiction over the subject matter to grant judicial review by writ of certiorari, or otherwise, of the action of the administrative agencies, and (2) whether the administrative bodies utilized the proper procedures to order a transfer of territory from Port Townsend School District No. 50 to Sequim School District No. 323. We affirm the action of the Superior Court granting judicial review of the administrative action but reverse the order granting the school district's motion for summary judgment on the merits.

In April 1976, a majority of the registered voters of the community of Gardiner submitted a petition to the superintendent of their educational service district requesting a

transfer of this territory from Port Townsend School District to Sequim School District. Gardiner is an isolated area wholly contained within Jefferson County. However, it is closer geographically to the town of Sequim which is located in Clallam County. The residents sought to have Gardiner annexed to Sequim School District rather than have their children travel approximately 21 miles to Port Townsend. Sequim School District is wholly contained within Clallam County, and Port Townsend District is wholly contained within Jefferson County. The superintendent of the educational service district concluded that two counties were involved and referred the petition to both the Jefferson and Clallam County school committees for approval pursuant to RCW 28A.57.240.[1] After holding public hearings, the Clallam County Committee approved the transfer; however, the Jefferson County Committee voted against the transfer perhaps because the Port Townsend District stood to lose 1.4 percent of its pupils and 4 percent of its tax base.

The procedures set forth in RCW 28A.57.245[2] were put into effect to resolve the deadlock. As required by this section, the State Superintendent of Public Instruction

---

[1] RCW 28A.57.240 provides in pertinent part:

"The duties in this chapter imposed upon and required to be performed by a county committee and by an educational service district superintendent in connection with a change in the organization and extent of school districts and/or with the adjustment of the assets and liabilities of school districts and with all matters related to such change or adjustment whenever territory lying in a single county is involved shall be performed jointly by the county committees and by the superintendents of the several educational service districts as required whenever territory lying in more than one county or educational service district is involved: . . ."

[2] RCW 28A.57.245 provides in pertinent part:

"Whenever a change in the organization and extent of school districts or an adjustment of the assets and liabilities of school districts, or both, or any other matters related to such change or adjustment involve a joint district, and a majority of the county committee or either county approve a proposal but the proposal is not approved by the other county committee or said committee fails or refuses to act upon the proposal within sixty days of its receipt, the county committee approving the proposal shall certify the proposal and its approval to the

appointed a temporary committee to resolve the question. After holding a fact–finding hearing as required by the statute, the temporary committee approved the transfer. The decision of the temporary committee was based primarily upon Gardiner's closer proximity to Sequim. After a public hearing held on August 26, 1976, the State Board of Education affirmed the decision of the temporary committee and ordered that the transfer of territory take place.

The Port Townsend district filed an application for a writ of certiorari or writ of prohibition in Thurston County Superior Court seeking judicial review of the use of the joint district procedures contained in RCW 28A.57.240 and RCW 28A.57.245. The Port Townsend district claimed that since Gardiner was contained wholly within Jefferson County, the joint district procedures were invoked improperly and the temporary committee did not have jurisdiction. The State Superintendent moved to dismiss the application for lack of subject matter jurisdiction and moved for summary judgment that the use of the joint district procedures was proper. Meanwhile, the Port Townsend district moved for summary judgment on the procedural issue. The Superior Court denied the motions of the State Superintendent. It ordered the issuance of the writ of certiorari and granted Port Townsend's summary judgment motion, holding the administrative proceedings to be void due to the improper use of the joint district procedures.

The first issue raised is whether the Superior Court had jurisdiction over the subject matter to order judicial review

state superintendent of public instruction. Upon receipt of a properly certified proposal, the state superintendent of public instruction shall appoint a temporary committee on joint school district organization composed of five persons. . . . [T]his temporary committee on joint school district organization shall have jurisdiction of the proposal and shall treat the same as a proposal initiated on its own motion. Said committee shall have the powers and duties imposed upon and required to be performed by a county committee under the provisions of this chapter . . ."

of the administrative determinations. The State Superintendent argued that the Superior Court erred in granting Port Townsend district's writ of certiorari since such a writ may be used only to review administrative actions of a quasi–judicial nature.

A statutory writ of certiorari authorized by RCW 7.16.040 may be issued "only to review actions of boards exercising *judicial functions." State ex rel. Hood v. Personnel Bd.,* 82 Wn.2d 396, 399, 511 P.2d 52 (1973). It may not be used to obtain judicial review of purely legislative, executive or ministerial acts of the agency. *State ex rel. New Washington Oyster Co. v. Meakim,* 34 Wn.2d 131, 208 P.2d 628 (1949); *Lumpkin v. Department of Social & Health Servs.* 20 Wn. App. 406, 412, 581 P.2d 1060 (1978). The act of changing boundaries of a political subdivision is an exercise of quasi–legislative power. *E.g., State ex rel. Bowen v. Kruegel,* 67 Wn.2d 673, 409 P.2d 458 (1965). Specifically, the formation of school districts and the adjustment of district boundaries is an exercise of quasi–legislative power delegated by statute to, and administered by, the county committees. *See Shoreline School Dist. 412 v. Taxpayers of Shoreline School Dist. 412,* 52 Wn.2d 849, 329 P.2d 829 (1958); *Wheeler School Dist. 152 v. Hawley,* 18 Wn.2d 37, 137 P.2d 1010 (1943); 78 C.J.S. *Schools and School Districts* § 27 (1952). Therefore, the Superior Court did not have jurisdiction to review under a statutory writ of certiorari.

The Superior Court, however, is empowered to grant review of certain nonjudicial agency actions under its inherent judicial power vested by article 4, sections 1 and 6 of the Washington Constitution. When the petitioner asserts that the agency's decision was arbitrary and capricious, our courts limit inherent judicial review to agency actions that violate fundamental rights. *State ex rel. Hood, supra* at 402. *See also Pettit v. Board of Tax Appeals,* 85 Wn.2d 646, 652, 538 P.2d 501 (1975); *State ex rel. DuPont-Fort Lewis School Dist. 7 v. Bruno,* 62 Wn.2d 790, 794, 384 P.2d 608 (1963); *Lane v. Ocosta School Dist. 172,* 13 Wn.

App. 697, 702, 537 P.2d 1052 (1975). This is in keeping with the long-standing policy of narrow judicial review of nonjudicial determinations by governmental agencies. *See Citizens Against Mandatory Bussing v. Palmason,* 80 Wn.2d 445, 448, 495 P.2d 657, 50 A.L.R.3d 1076 (1972). Courts will not substitute their judgment for that of an agency exercising quasi–legislative power unless the agency's action is outside the scope of its statutory authority or so arbitrary and capricious as to do violence to a fundamental right. K. Davis, *Administrative Law Treatise* § 30.10 (1958); *State ex rel. Hood, supra* at 401.

The Port Townsend district asserts that the parents, students, taxpayers and the school district have a fundamental right not to have the territory of their school district reduced without the use of the proper procedures. The test of whether a fundamental right is involved "is the basic nature and extent or magnitude of the right involved coupled with the patency and character of the alleged violation." *State ex rel. DuPont, supra* at 794. More specifically, a fundamental right exists when the administrative tribunal does not have discretion to deny the substantive right asserted once minimum statutory qualifications are met. *State ex rel. DuPont, supra.*

We cannot find that a fundamental right exists under this criterion. Since neither county was entitled to demand nor veto the transfer, the Port Townsend district does not have a fundamental right at stake. Like a legislature, the county committee under RCW 28A.57 makes a policy determination, guided by certain considerations imposed by statute, whether or not school district boundaries should be adjusted after an overall evaluation of such factors as necessity, economic effect and future planning. No persons or groups under the chapter can demand that a transfer take place or not by meeting any minimum qualifications set in the statute. The mere fact that RCW 28A.57 grants discretion to the county committee to determine questions relating to school district boundary disputes, and to the joint committee and temporary committee and finally the

state board when joint districts are involved, indicates that the decision to be made is not merely a ministerial determination but is a discretionary one made after an evaluation of all relevant facts. *See State ex rel. DuPont, supra* at 798. Likewise, we cannot find that the taxpayers, parents or students have a fundamental right involved. The taxpayers of the district do stand to suffer a school levy increase as a result of the actions but the mere fact that a tax increase may result from quasi–legislative actions does not give rise to a fundamental right. Since parents do not have a right to send their children to a particular school, the parents and students do not have fundamental rights at stake either. *See Citizens Against Mandatory Bussing v. Palmason, supra* at 453.

The State Superintendent next contends, however, that because fundamental rights are not involved, the Superior Court was absolutely powerless to grant judicial review of the temporary committee's decision. We do not agree with this broad contention. In its petition to the Superior Court seeking judicial review, the Port Townsend district asserted that the temporary committee did not have jurisdiction to make the ultimate determination of the transfer since the joint district procedures were improperly invoked. Unlike the cases in which fundamental rights first had to be found in order to review the quasi–legislative acts of agencies, the Port Townsend district does not challenge the substantive determination of the temporary committee and ask the Superior Court to review the evidence and determine whether or not the agency's decision is unreasonable and without basis in fact. Instead, the district asked that the court determine as a matter of law whether the temporary committee had jurisdiction based on whether the joint district procedures were properly invoked. This required that the Superior Court engage in statutory construction to determine legislative intent.

▮ Where, as here, the issue is whether the administrative tribunal acted within the limits of its delegated power, the superior court has jurisdiction to determine the limits

of agency jurisdiction. The responsibility for determining the limits of the statutory grants of authority is a judicial function reposing in the courts by their inherent constitutional power. *Stark v. Wickard,* 321 U.S. 288, 310, 88 L. Ed. 733, 748, 64 S. Ct. 559, 571 (1944). To hold otherwise would allow the agency itself to determine whether or not it had jurisdiction and would make the administrative tribunal the final judge of the exercise of its own power. Jaffe, *Judicial Review: Constitutional and Jurisdictional Fact,* 70 Harv. L. Rev. 953, 959 (1957). Such a holding would be contrary to the very basis of the ultra vires theory upon which administrative law is based, under which agency power is always circumscribed by the authority granted by statute. B. Schwartz, *Administrative Law* § 146 (1976); Jaffe, *The Right to Judicial Review,* 71 Harv. L. Rev. 401, 403 (1958).

It is well settled that an administrative agency has only those powers which are expressly or implicitly granted to it by statute, *Burlington Northern, Inc. v. Johnston,* 89 Wn.2d 321, 326, 572 P.2d 1085 (1977), and that the actions of an agency in excess of its statutory authority are void. *See Arbogast v. Westport,* 18 Wn. App. 4, 7-8, 567 P.2d 244 (1977). We hold that the Port Townsend district raises a valid issue of law as to whether or not the temporary committee had jurisdiction to order the transfer of territory which had to be resolved by the courts through the exercise of their inherent judicial power. Therefore, the Superior Court had jurisdiction over the subject matter to grant judicial review by certiorari.

We wish to emphasize that our holding on this issue does not in any way disturb prior holdings that judicial review of quasi–legislative actions will be limited to those cases where the petitioners assert that a fundamental right is involved when the petitioner challenges the substantive determination of the agency on the basis that the decision is arbitrary and capricious. We adhere to the policy of narrow review of quasi–legislative agency action. However, when a party who has standing to contest the decision of an administrative

tribunal raises a valid issue of law challenging the jurisdiction of the tribunal which must be resolved by the courts by way of statutory construction, the superior court has jurisdiction to review such a claim under its inherent judicial power. This does not give every litigant asserting that the agency lacked jurisdiction an automatic right of judicial review of unfavorable agency decisions. Such review may be granted only when a valid issue of law is raised challenging the power of the agency to make its determination.

Having determined that the school district has a right to judicial review, we now address the merits of the appeal: the question of the proper procedures to be used for the transfer of the territory. RCW 28A.57 sets forth two mechanisms to effect changes in school district boundaries. The first is found in RCW 28A.57.180, .050 and .055. A petition signed by a majority of the registered voters residing in the territory to be transferred is first validated under RCW 28A.57.180. The petition is then referred to the local county committee on school district organization. The county committee is required, among other things under RCW 28A.57-.050, to prepare a map showing the boundaries of the districts involved or affected by the proposed change, to make adjustments in the property, assets and liabilities of the districts involved or affected, and to give notice of public hearings on the proposed changes. After the hearings are held, the county committee is empowered to make a decision on the proposed transfer based upon the guidelines set forth in RCW 28A.57.055.

The second mechanism concerns joint school districts. A joint school district is any school district composed of territory lying in more than one county. RCW 28A.57.230. RCW 28A.57.240 states that the duties performed by a county committee regarding changes in the organization and extent of school districts involving a single county "shall be performed jointly by the county committees . . . *whenever territory lying in more than one county . . . is involved.*" (Italics ours.) RCW 28A.57.245 provides for the appoint-

ment of a temporary committee by the State Superintendent when the county committees cannot agree on the proposed transfer. This latter mechanism concerning joint school districts dates from the 1947 and 1959 legislative sessions. Laws of 1947, ch. 266, § 26. Laws of 1959, ch. 268, § 5. The basic provisions now codified in RCW 28A.57.180, .050 and .055, however, date much earlier. Laws of 1915, ch. 50.

It is not disputed that a joint school district will be created if the proposed transfer of Gardiner takes place since Sequim School District will then contain territory from both Clallam and Jefferson counties. Port Townsend district argues that the joint district procedures are not to be used unless the territory being transferred is situated in more than one county. The Superior Court agreed, holding that since the present situation is not provided for expressly in the statutory scheme, the general provisions of RCW 28A.57.180, .050 and .055 apply.

█ We agree that an ambiguity exists in that the present situation is not expressly provided for in RCW 28A.57, and we must construe the chapter and statutes involved. The ultimate goal of statutory construction is to carry out the intent of the legislature. *E.g., Dominick v. Christensen,* 87 Wn.2d 25, 548 P.2d 541 (1976). Legislative intent is to be determined in the context of the entire statute, interpreted in terms of the statute's general purpose. *Anderson v. Morris,* 87 Wn.2d 706, 558 P.2d 155 (1976). The primary purpose of RCW 28A.57 is to incorporate all essential provisions governing the formation of new school districts and the alteration of the boundaries of existing school districts. RCW 28A.57.010. Thus, the legislature intended to create a complete scheme to govern all school district boundary questions and did not intend to leave a "hole" in the coverage of the statute.

█ It is a fundamental rule of statutory construction that where a general statute and a subsequent special statute relate to the same subject matter, the provisions of the

special statute will prevail unless it appears that the legislature intended expressly to make the general statute controlling. *E.g., Wark v. Washington Nat'l Guard,* 87 Wn.2d 864, 867, 557 P.2d 844 (1976); *Hama Hama Co. v. Shorelines Hearings Bd.,* 85 Wn.2d 441, 447, 536 P.2d 157 (1975); C. Sands, *Statutes and Statutory Construction* § 51.05 (4th ed. 1973). The special statute is then viewed as an exception to or qualification of the general statute. *Wark v. Washington Nat'l Guard, supra;* C. Sands, *supra.* Therefore, if the specific procedures of RCW 28A.57.240 and .245 apply, these specific statutes prevail over the more general provisions.

■ We cannot accept the Port Townsend district's argument that the joint district procedures do not apply to the creation of joint school districts. The joint district procedures apply to "change[s] in the organization and extent of school districts". RCW 28A.57.240. These terms mean *"the formation and establishment of new school districts"* as well as the alteration of the boundaries of existing districts. (Italics ours.) RCW 28A.57.020(1). Further, the title to the 1959 legislation creating the temporary committee procedures contained in RCW 28A.57.245 describes the legislation in part as an act "creating temporary committees on joint school district organization". Laws of 1959, ch. 268. Although not controlling of legislative intent, the title is persuasive authority that the legislature intended that the joint district procedures should apply to the creation of joint school districts. C. Sands, *supra* § 47.03.

The issue is then reduced to whether the joint district procedures apply when the territory to be transferred is located wholly within one county. RCW 28A.57.240 applies "whenever territory lying in more than one county or educational service district is *involved*". (Italics ours.) Involved means affected. *Culver v. Kurn,* 354 Mo. 1158, 193 S.W.2d 602, 604 (1964); *Webster's Third Int'l Dictionary* 1191 (1969). It is clear from the record that territory in both Jefferson and Clallam counties will be affected by the proposed transfer. One district will lose pupils and the tax

base, while the other will gain pupils and tax base territory. Further, RCW 28A.57 directs that in carrying out their redistricting functions, the county committees must study the areas affected by the changes and hold public hearings. *See* RCW 28A.57.050. This concern for citizen participation in the decision–making process carries out one of the stated purposes of the chapter which is

> to establish methods and procedures whereby the aforesaid changes in the school district system may be brought about *by the people concerned and affected . . .*

(Italics ours.) RCW 28A.57.010. It is logical to conclude that since the residents of Clallam County will be affected by the proposed transfer of territory, the legislature intended the residents to participate in the decision through their county committee. To hold otherwise would mean that the residents of one county could force an undesirable territory upon a district in another county by initiating a petition under RCW 28A.57.180 without the consent or participation of the second county. The residents could then petition for return of the territory and the county committee of the second county force the territory back upon the first county, which in turn could force it upon the second county again. This is not the result that the legislature contemplated when it enacted RCW 28A.57 with the expressed intent that it provide a comprehensive and orderly system for school district organization.

█ Prior administrative interpretations have applied the joint district procedures when territory contained solely within one county is transferred to districts in a second county. It is recognized that in none of the prior transfers did the two county committees disagree on the transfer requiring the invocation of the temporary committee procedures contained in RCW 28A.57.245. However, the legislature enacted the temporary committee procedures contained in RCW 28A.57.245 to resolve just such deadlocks, and the construction placed upon an ambiguous statute by the officers charged with its administration is entitled to considerable weight in determining legislative

658

intent. *E.g., Weyerhaeuser v. Department of Ecology,* 86 Wn.2d 310, 315, 545 P.2d 5 (1976); *Bradley v. Department of Labor & Indus.,* 52 Wn.2d 780, 786, 329 P.2d 196 (1958).

We conclude that under the clear meaning of RCW 28A-.57.240, Clallam County is also "involved" in the proposed transfer. Therefore, the joint district procedures of RCW 28A.57.240 were properly invoked, and the temporary committee had jurisdiction under RCW 28A.57.245 to make the ultimate decision on the proposed transfer. We reverse the order of the Superior Court holding the administrative proceedings to be void and affirm the decisions of the temporary committee and the State Board of Education.

PEARSON, C.J., and PETRIE, J., concur.