[No. 3053-2.   Division Two.   May 21, 1979.]

HARVARD WILSON, *Appellant,* v. LEONARD NORD, ET AL, *Respondents.*

*Dean A. Floyd,* for appellant.

*Slade Gorton, Attorney General,* and *Byron L. Brown* and *Richard A. Heath, Assistants,* for respondents.

PEARSON, C.J.—Mr. Wilson appeals from a Superior Court order dismissing his claim that the Personnel Board acted illegally or arbitrarily and capriciously in allowing certain hearings examiners at the Department of Social and Health Services (DSHS) to retain their upgraded positions without a competitive exam. We reverse the order of dismissal and remand the case back to the Board for additional findings and conclusions.

The facts surrounding this dispute are fairly simple. DSHS employs a number of lawyers, called hearings examiners, who listen to arguments from private individuals or their counsel who request permits from the state or are appealing the denial of certain benefits. In early 1972 the workload of these examiners was such that DSHS was allowed to hire 12 additional lawyers. This increase nearly doubled the size of the hearings office and created a need for more middle–line supervisors in the Spokane, Seattle, and Olympia offices. Six persons, who were classified hearings examiner II's, were given this responsibility: Messrs. Barge, Hutton, Martin, Henry, Bernard, and Ms. Cheap. Subsequently, they petitioned the Department of Personnel under WAC 356–10–030 for a reallocation upward of their employee classification. Reallocation is a process of determining what classification appropriately applies to a position if it appears that the duties assigned to that position do not comport with the classification schedule describing the position. This determination is made without regard to the individual who holds the position at the time the determination is made.

Sometime in late 1974 the six positions were reallocated as hearings examiner III positions.[1] Appellant does not challenge the validity of the reallocation, but directs his

---

[1]The record is unclear as to exactly when the agency made the decision to reallocate and we have no findings to guide us.

argument at the decision to retain the six persons who were incumbents at the time of reallocation.

Once a position has been reallocated upward, the general rule is that it will be filled by competition among eligible employees.[2] Wilson, who was a hearings examiner II in the hearings office, sought to compete for one of the six positions, but permission was denied. He requested a hearing before the Personnel Board, but this too was denied.[3] The Board stated that the general rule of competition did not apply in this case because the six employees already occupying the reallocated positions were entitled to retain these positions under the incumbency rules set forth in WAC 356–10–050(2) and (5).

Wilson then brought an action in Thurston County Superior Court invoking the court's inherent power to review nonjudicial administrative actions.[4] The Superior Court dismissed his complaint on the grounds that Wilson lacked standing to seek review and the court lacked jurisdiction to review the cause of action.

---

[2]WAC 356–10–050(1):

"Employees in positions which have been reallocated upward are affected as follows:

"(1) Employee must compete and be certified from the appropriate eligible register unless otherwise determined by the Director when the position is reallocated upward based on recent or impending changes in duties and responsibilities. The employee's salary is then adjusted in accordance with the Rule governing promotion."

[3]Subsequent amendment of RCW 41.06.170(2) gives persons in the same position as Mr. Wilson a right to a Personnel Board hearing.

[4]Mr. Wilson's complaint was entitled, "Complaint for Declaration of Rights and Damages." It is apparent from the record that what he was actually seeking was an injunction barring the six incumbents from office on the ground their appointment was illegal and a separate injunction ordering DSHS to promote him to hearings examiner III with back pay. Therefore, as is our custom, we consider plaintiff's action to be an "'application for judicial review, injunctive relief, and whatever other relief may be appropriate.'" *Casebere v. Clark County Civil Serv. Comm'n*, 21 Wn. App. 73, 77 n.2, 584 P.2d 416 (1978). *See also Citizens Against Mandatory Bussing v. Palmason*, 80 Wn.2d 445, 447 n.2, 495 P.2d 657, 50 A.L.R.3d 1076 (1972).

On appeal, Wilson assigns error to all of the trial court's conclusions of law and reasserts his basic contention that the Personnel Board acted illegally or arbitrarily and capriciously by approving the retention of six incumbents as hearings examiner III's and not requiring a competitive exam. Had the Department ordered a competitive exam, a dozen or more persons would have been eligible to take the exam; however, Wilson was the only one to complain.

■ The preliminary issue is whether appellant, as a hearings examiner II, eligible for promotion to hearings examiner III, has standing to challenge the manner in which the incumbents were retained. We think he does. The opportunity to fairly compete for a promotion is an interest protected by the Civil Service Law, RCW 41.06-.150. Standing has routinely been granted to eligible persons who claim to have been illegally deprived of this opportunity. *See Casebere v. Clark County Civil Serv. Comm'n,* 21 Wn. App. 73, 584 P.2d 416 (1978); *Green v. Cowlitz County Civil Serv. Comm'n,* 19 Wn. App. 210, 577 P.2d 141 (1978). *See generally Bolser v. State Liquor Control Bd.,* 90 Wn.2d 223, 580 P.2d 629 (1978). Appellant's first contention is that the Personnel Board violated RCW 41.06.150(2) by promulgating WAC 356–10–050 which allows an incumbent to assume an upgraded position without competing for it. We hold that the Board acted within its authority when it adopted WAC 356–10–050.

■ Subsection 15 of RCW 41.06.150 allows the Board to adopt rules and procedures regarding reallocations. WAC 356–10–050 is one of those rules. In effect, it says that the Board has determined no vacancy exists when a position is reallocated upward and an incumbent, meeting certain qualifications, already occupies the position. We have previously indicated that an agency's interpretation of special administrative statutes is entitled to great weight. *Port Townsend School Dist. 50 v. Brouillet,* 21 Wn. App. 646, 587 P.2d 555 (1978). *See also Hama Hama Co. v. Shorelines Hearings Bd.,* 85 Wn.2d 441, 536 P.2d 157 (1975). We

think the Personnel Board's special treatment of incumbents whose job responsibilities have been or will be enlarged is reasonable and does not violate the general intent of the legislature that vacancies be filled by competitive examination. *Lumpkin v. Department of Social & Health Servs.*, 20 Wn. App. 406, 409, 581 P.2d 1060 (1978). In adopting subsection 15 of RCW 41.06.150, the legislature intended that the Board would fill in gaps in the Civil Service Law. WAC 356-10-050 has been in existence in substantially the same form since 1966 and has not been repudiated by the legislature. We can presume, therefore, that the legislature has acquiesced in the Board's interpretation of its authority. *Bradley v. Department of Labor & Indus.*, 52 Wn.2d 780, 329 P.2d 196 (1958).

Appellant's second contention is that even if WAC 356-10-050 is a valid exercise of agency authority, the agency nevertheless acted illegally because it did not comply with the requirements of the rule in making its determination to retain the six individual defendants. Before we review the merits of appellant's contention, we must first determine whether the courts have jurisdiction to review this administrative decision. The trial court concluded they do not. We disagree.

██ ██ It is true that this action is not a "contested case" under the state administrative procedures act, *see* RCW 34.04.010(3), .130, nor is it a "judicial" action for purposes of the writ of certiorari, RCW 7.16.040, *see State ex rel. Hood v. State Personnel Bd.*, 82 Wn.2d 396, 399, 511 P.2d 52 (1973). Furthermore, the Civil Service Law contains no provision for administrative or judicial review for this type of administrative decision. RCW 41.06. However, the absence of a statutory method of review does not foreclose the courts from assuming jurisdiction. Courts have inherent power, under article 4, sections 1 and 6 of our state constitution, to review any final action of an administrative agency. *Port Townsend School Dist. 50 v. Brouillet, supra. See State ex rel. Cosmopolis Consol. School Dist. 99 v. Bruno*, 59 Wn.2d 366, 367 P.2d 995 (1962). This is not to

say that courts are free to substitute their beliefs for those of an agency or to act in a supervisory capacity. Quite the contrary, the scope of review is extremely limited.

> [T]he judiciary will only review the actions of an administrative agency to determine if its *conclusion* may be said to be, *as a matter of law,* arbitrary, capricious, or contrary to law.

(Some italics ours.) *Reiger v. Seattle,* 57 Wn.2d 651, 653, 359 P.2d 151 (1961); *Helland v. King County Civil Serv. Comm'n,* 84 Wn.2d 858, 863, 529 P.2d 1058 (1975) (citing *DuPont–Ft. Lewis School Dist. 7 v. Bruno,* 79 Wn.2d 736, 489 P.2d 171 (1971)). *See also State ex rel. Perry v. Seattle,* 69 Wn.2d 816, 420 P.2d 704 (1966).[5]

It is sometimes said that the scope of review in nonstatutory review cases carries another limitation, namely, that the asserted illegality must involve a "fundamental right." Our reading of the cases espousing this test convinces us that it is not a further limitation on the scope of review, but simply an alternate formulation of the illegality standard set out in *Helland* and *Reiger.*

In many cases applying the fundamental right test, courts find no fundamental right exists because there has been no illegal action. *See, e.g., Pettit v. Board of Tax Appeals,* 85 Wn.2d 646, 652–53, 538 P.2d 501 (1975); *State ex rel. Hood v. State Personnel Bd., supra* at 402–03; *Citizens Against Mandatory Bussing v. Palmason,* 80 Wn.2d 445, 460, 495 P.2d 657 (1972); *DuPont–Ft. Lewis School Dist. 7 v. Bruno,* 62 Wn.2d 790, 384 P.2d 608 (1963); *Lane v. Ocosta School Dist. 172,* 13 Wn. App. 697, 537 P.2d 1052 (1975); *Mattox v. State Bd. Against Discrimination,* 13 Wn. App. 406, 535 P.2d 470 (1975).

---

[5]Appellant has not asked us to apply the "clearly erroneous" standard to nonstatutory review cases. We note in passing that this standard has been applied only to nonstatutory review of environmental cases. *See Norway Hill Preservation & Protection Ass'n v. King County Council,* 87 Wn.2d 267, 552 P.2d 674 (1976); *Leschi Improvement Council v. State Highway Comm'n,* 84 Wn.2d 271, 525 P.2d 774 (1974).

At the same time, other cases readily find a "fundamental" right exists any time a complainant can show that an agency's discretion is limited by constitution, statute, rule, regulation, or case law. *See, e.g., Leschi Improvement Council v. State Highway Comm'n,* 84 Wn.2d 271, 525 P.2d 774 (1974); *Port Townsend School Dist. 50 v. Brouillet, supra; Casebere v. Clark County Civil Serv. Comm'n, supra; Green v. Cowlitz County Civil Serv. Comm'n, supra; Butler v. Federal Way School Dist. 210,* 17 Wn. App. 288, 562 P.2d 271 (1977).

Thus, the fundamental right limitation boils down to a rule which says that a complainant with standing has a fundamental right to have the agency abide by the constitution, statutes, and regulations which affect the agency's exercise of discretion. *See Casebere v. Clark County Civil Serv. Comm'n, supra; Green v. Cowlitz County Civil Serv. Comm'n, supra; Tacoma v. Civil Serv. Bd.,* 10 Wn. App. 249, 518 P.2d 249 (1973). We are mindful that no matter which test is applied the agency will seldom be reversed and jurisdiction to review will seldom be granted.

We now turn to the merits of appellant's complaint to determine whether the retention of the six incumbents was, as a matter of law, arbitrary and capricious, or contrary to law, *see Reiger v. Seattle, supra,* and, if so, whether the illegality prejudiced appellant by depriving him of an opportunity to compete for promotion. *See Mentor v. Kitsap County,* 22 Wn. App. 285, 588 P.2d 1226 (1978); *Casebere v. Clark County Civil Serv. Comm'n, supra* at 79–80; *Lumpkin v. Department of Social & Health Servs., supra.*

Messrs. Barge, Hutton, and Martin were retained pursuant to WAC 356–10–050(5) which states:

The Director may approve the retention of status without examination for an incumbent in a reallocated position when it is evident that the reallocation is, in effect, the correction of a long–term inequity.

The record is not clear as to how long Barge, Hutton, and Martin were performing hearings examiner III work. There

is some indication that Hutton performed such duties for only 26 months. Past and present analysts from the Personnel Department testified that, as a rule of thumb, persons with 3 years' tenure in a reallocated position generally qualify under the "long–term inequity" provision.

Failure to follow the rule of thumb is not an abuse of discretion. Reasonable persons could certainly conclude that occupying a position for more than 2 years without the benefit of proper classification constitutes a long–term inequity. We have no findings, however, on which to assess the validity of the Personnel Department's action. Consequently we must remand the case to the trial court with directions to remand this case to the Personnel Board for a determination of the length of time Barge, Hutton, and Martin performed hearings examiner III duties and its conclusion whether, in view of the circumstances and length of time involved, the Department acted arbitrarily and capriciously in retaining the three individuals under WAC 356–10–050(5).

Messrs. Bernard and Henry and Ms. Cheap were retained pursuant to WAC 356–10–050(2) which states:

Employee must compete and be certified from the appropriate eligible register when the position is reallocated based on a gradual accumulation of higher level duties and responsibilities. The employee's salary is then adjusted in accordance with the Rule governing promotion; *however,* the Director shall approve the retention of status under the following conditions:

(a) The accumulation has occurred over a period of one year or more and during tenure of the present incumbent.

(b) The incumbent meets the minimum or desirable qualifications for the new class; or, the appointing authority or designated representative, may certify that the incumbent is able to perform the duties of the position and that the incumbent meets acceptable qualifications as determined by the Director.

(c) The appointing authority, or designated representative, requests such approval in writing and indicates

why the change was not reported earlier and why competition in filling the position is not feasible or desirable.

(d) The incumbent passes the appropriate examination.

(Italics ours.) Again no findings of fact were entered which would aid us in determining whether the agency complied with the rule. The first requirement is that the position involved must have been reallocated "based on a *gradual accumulation* of higher level duties and responsibilities." (Italics ours.) It appears doubtful in this case that there was a gradual accumulation of duties; DSHS supervisors seemed to indicate that the six positions were created instantly in 1972. If this is the case, then the reallocated positions fall within WAC 356–10–050(1):

> Employee must compete and be certified from the appropriate eligible register unless otherwise determined by the Director when the position is reallocated upward based on recent or impending changes in duties and responsibilities. The employee's salary is then adjusted in accordance with the Rule governing promotion.

Subsections 1 and 2 of WAC 356–10–050 are mutually exclusive and an incumbent in a position reallocated for reasons other than a gradual accumulation under subsection 2 must compete for the position under subsection 1 unless, of course, he qualifies for retention under one of the other exceptions not argued here.[6] On remand, the Personnel Board must determine whether in fact there was a gradual accumulation of duties. If there was no gradual accumulation, then the three appointments were void and the rules of competition apply.

---

[6]WAC 356–10–050(5) is set out in the text above. WAC 356–10–050(4) states:

The employee retains existing appointment status when the position is reallocated based on a revision of a class series, a class series study, or an agency– or major subdivision–wide classification review planned and conducted by the Department of Personnel, when the reallocation involves no change in duties or responsibilities. The employee's salary then is adjusted to the same step in the new range as held in the present range.

(a) An employee in an underfill status will maintain that status.

(b) Paragraphs (1) or (2) apply when a change in duties, responsibilities, or organization coincides with a revision of a class series.

If the Personnel Board determines that there was a gradual accumulation of duties, further findings will be necessary regarding subsections 2(a) and (c) of WAC 356–10–050. Appellant contends that as to Ms. Cheap, the 1–year requirement under subsection 2(a) was not met and that as to all three employees DSHS did not comply with subsection 2(c) by filing a written request to retain the incumbents, indicating why the change was not reported earlier and why competition in filling the position was not feasible or desirable. If appellant's contentions are found to be true, the Board must go on to determine whether under all the circumstances the appointments are void.[7]

■■ In addition to seeking to void the six appointments, appellant also seeks to have himself appointed to one of the positions and to recover attorney's fees. The remedy of mandating DSHS to appoint appellant to a hearings examiner III position is not available in this case. Although appellant is entitled to prevent the agency from exercising discretion arbitrarily and capriciously, he is not entitled to have the agency exercise its discretion in his favor. *State ex rel. Ryder v. Pasco,* 3 Wn. App. 928, 478 P.2d 262 (1970). Likewise, appellant is not entitled to attorney's fees because he has not shown that the agency's conduct was oppressive, wanton, or in bad faith. *See Seattle School Dist. 1 v. State,* 90 Wn.2d 476, 540, 585 P.2d 71 (1978); *Hsu Ying Li v. Tang,* 87 Wn.2d 796, 798, 557 P.2d 342 (1976); *Snyder v. Tompkins,* 20 Wn. App. 167, 174, 579 P.2d 994 (1978).

---

[7]With regard to retention of Ms. Cheap, respondent informs us in his brief that she retired April 30, 1978. If this is true, then the argument as to the validity of her appointment has become moot. *See Helland v. King County Civil Serv. Comm'n,* 84 Wn.2d 858, 861, 529 P.2d 1058 (1975). As to the failure of DSHS to put its request and reasons in writing as required by WAC 356–10–050(2)(c), we note the testimony of Mr. Floyd, personnel analyst, who stated that the Department routinely ignores the requirement and allows the appointing authority to make a verbal statement instead. It is for the Board to determine whether the failure to follow the rule prejudiced the appellant. *Mentor v. Kitsap County,* 22 Wn. App. 285, 588 P.2d 1226 (1978).

The case is reversed and remanded for an order directing the Personnel Board to proceed in accordance with our opinion above.

REED and SOULE, JJ., concur.

Reconsideration denied July 2, 1979.

Review denied by Supreme Court September 21, 1979.