[No. 3273–2.   Division Two.   June 29, 1979.]

ALAN BANKHEAD, *Appellant*, v. THE CITY
OF TACOMA, ET AL, *Respondents*.

*John A. McCarthy,* for appellant.

*F. H. Chapin, Jr., Reed, McClure, Moceri & Thonn, William R. Hickman,* and *John D. Wilson,* for respondents.

PEARSON, C.J.—This appeal arises out of dismissal of a number of claims emanating from plaintiff's separation from service as a graphic arts specialist with the City of Tacoma. The claims generally involve whether plaintiff, Alan Bankhead, was properly terminated and whether he was defamed by his former supervisor. We affirm the trial court's judgment.

Plaintiff was first hired as an artist for the city in October 1971. His salary was at that time funded under a federal employment program called P.E.P. According to an undisputed affidavit, persons employed pursuant to such grants are classified as "temporary employees" of the city.

On June 10, 1974, plaintiff was given a temporary, city–funded appointment in the newly created job classification

of graphic arts specialist. Under the applicable rules, discussed in detail below, plaintiff retained temporary employee status while an examination for his new position was prepared and administered. Based on the examination, an eligibility list was established on February 20, 1975. Though plaintiff was ranked number 4 on that list, he continued to be employed in the graphic arts specialist job pending appointment of a permanent employee.

On June 9, 1975, plaintiff was permanently appointed to the graphic arts specialist position by the city clerk, the appropriate appointing officer. Under the applicable rules, he was required to serve a 9–month probationary period before acquiring full civil service status. He was subject to termination during his probationary period without all of the procedural rights associated with termination of a non-probationary permanent employee.[1]

---

[1]Section 1.24.780 of the Tacoma Municipal Code provides:

"The probationary period shall be regarded as an integral part of the examination process and shall be utilized for closely observing the employee's work, for securing the most effective adjustment of the new employee to his position, and for rejecting any employee whose performance or adjustment is not satisfactory.

"*All original appointments, except those made from re–employment lists, shall be probationary for a period of nine months after appointment.* Appointments made from re–employment lists shall be probationary for the period of probation remaining unserved at the time of layoff. All appointments made to entering positions in the Police Department, the class of Fire Fighter and all appointments made pursuant to the provisions of Section 1.24.585 of these Rules shall be probationary for a one–year period. All other appointments shall be probationary for a period of six months; provided however, employees enrolled in an approved Washington State apprentice program as approved by Washington State Apprenticeship & Training Council and State Department of Labor and Industries, who are granted status in accordance with Section 1.24.570 shall serve their probation for the journeyman class during the last six months of the apprentice program. *Periods of leaves of absence without pay or sick leave with pay shall not be included in computing the probationary period.* The appointing authority shall make such periodic reports during the probationary period as the Personnel Director requires and shall certify to the Personnel Director, on the prescribed form, the name of each employee who satisfactorily completes the probationary period. *At any time during the probationary period, the appointing authority may remove or demote an employee whose performance or adjustment is not satisfactory, provided that he shall notify the employee and the Personnel Director of the reasons for such action.* The Personnel Director, on the basis of this report, may reinstate the employee to the employment list, should such

During his probationary period, plaintiff took 8 days of sick leave which, according to the city's contention, extended his probation by 8 days. Five days before the end of his probationary period, as extended, plaintiff was terminated by the city clerk.

Plaintiff requested, and was granted, an administrative review of the termination by an administrative board. He was not afforded a full hearing before the Tacoma Civil Service Commission, on the basis that he was a probationary employee when he was terminated. During the course of this review, the city clerk twice supplied written rationales for his action. After the dismissal was upheld, the clerk, on three occasions, communicated that fact to prospective employers of plaintiff. In these various communications, plaintiff alleges he was defamed.

After his termination, plaintiff brought suit against the city, the city clerk, and a fellow employee. On motion by the defendants, summary judgment was granted on all of plaintiff's claims except for one involving an alleged assault by the fellow employee. That claim has been set down for trial and is not part of this appeal.

In order to decide the issues raised on appeal, we must first define the scope of judicial review of the challenged actions. Because of the nature of the alleged errors, considering the propriety of judicial review requires us to consider both the question of plaintiff's standing and whether or not the action of the city involved a so-called "fundamental right." *See Wilson v. Nord,* 23 Wn. App. 366, 597 P.2d 914 (1979).

---

action appear to be in the best interests of the City. If an employee promoted to a higher class as a result of certification from an appropriate employment list, is found unsuited for work of the class during the probationary period, he shall be restored to the position or other positions in the class from which he was promoted. An employee promoted to a position may, at any time during his probationary period, voluntarily terminate his probation. Such employees shall be reassigned to a position in the class from which he was promoted." (Italics ours.)

■■ In the Superior Court and in this court, all parties have agreed that review of the case is proceeding under the inherent power of the court, granted by article 4, sections 1 and 6 of the state constitution, to review administrative actions to determine whether they are arbitrary and capricious, or contrary to law. *State ex rel. Hood v. State Personnel Bd.*, 82 Wn.2d 396, 511 P.2d 52 (1973). The concept of violation of a fundamental right has long been associated with review of administrative actions under the court's inherent power. But as we explained in *Wilson v. Nord, supra*, the fundamental right concept means a petitioner has a right to enforce the requirement that an agency abide by the constitution, statutes, and regulations in the exercise of its discretion regarding him.

■ Initially, a party challenging an administrative action must possess standing, just as any litigant must. Standing has been defined as a presently existing, substantial interest in the subject matter of the suit which will be affected by the relief granted. *State ex rel. Hays v. Wilson*, 17 Wn.2d 670, 137 P.2d 105 (1943). The presence of some violation of law is not sufficient if the party challenging an action lacks standing to challenge the violation.

With these concepts in mind, we turn to the first set of issues raised by plaintiff. The basic contention raised is that plaintiff was not properly terminated because he had completed his probationary period prior to his termination. The argument is that the appointment must have occurred, by law, prior to the date shown by the record.

Plaintiff's first contention is that the city or its agents acted arbitrarily and capriciously in not appointing him in February, when the eligibility list was established, rather than in June, when he was actually appointed. In support of this contention, plaintiff cites section 6.14(h) of the Tacoma City Charter[2] and section 1.24.210 of the Tacoma

---

[2]Tacoma City Charter § 6.14(h), which defines the duty of the city to make permanent civil service appointments and limits temporary appointments, reads: "[The Civil Service and Personnel Rules] shall . . . provide:
" . . .

Municipal Code[3] for the proposition that his temporary position ceased to exist when the eligibility list became available in February 1975. From this, plaintiff argues that since he was not a temporary employee he must have been a permanent one. From this conclusion, plaintiff derives the further conclusion that the city acted arbitrarily in not appointing him permanently in February 1975.

■ We are unable to agree with these contentions. While it is true plaintiff alleges that the City violated its own rules, these violations, even if they occurred, do not entitle plaintiff to relief unless he has standing to challenge them. The rules in question are designed to promote efficiency in appointments by city agencies and to prevent circumvention of the civil service rules by the use of temporary appointments. They are not designed to allow an employee to choose his appointment date. It is the employer, not the employee, who makes the appointment and determines its effective date. *See Ross v. Department of Social & Health Servs.,* 23 Wn. App. 265, 594 P.2d 1386 (1979).

Had plaintiff been terminated when the eligibility list was first available and not reappointed until 6 months later, the situation would obviously be different. Likewise, had plaintiff been a person not employed by the city, but seeking such employment, his situation would have been different. He would then have had a direct economic stake in assuring that the appointment was made expeditiously. However, this is not what happened. While the city may have suffered inefficient administration, plaintiff at the

---

"(h) For temporary employment without examination in cases of emergency and pending appointment from an eligible list, but no such temporary employment shall continue after the establishment of an eligible list for the position held."

[3]Tacoma Municipal Code § 1.24.210 reads:

"[Temporary appointment is] The appointment of a person for a fixed period of time, not to exceed six months for service on a special job or project, or to fill a vacancy during the absence of a permanent employee who is on leave of absence, or an employee filling a permanent position for which no employment list exists pending the establishment of an employment list."

time suffered no loss at all. He was employed as a graphic arts specialist through the entire selection process. It is only by using hindsight that an argument can be constructed supporting some loss. Even then, the argument makes sense only if plaintiff ultimately was terminated. Such an after–the–fact analysis cannot be used to turn something in which plaintiff has no interest into a matter he has standing to challenge. This assignment of error thus has no merit.

Plaintiff's next contention is that the time he spent on sick leave should have been counted as part of his probationary period. Plaintiff does have standing to litigate this issue. Assuming a fundamental right exists, which the city seems to concede (though perhaps wrongly under the *Wilson v. Nord* rationale), Tacoma Municipal Code § 1.24.780[4] provides the answer to this argument. It clearly states that sick leave time off from work does not count toward completion of the probationary period. This rule, as long as it is in effect, is mandatory and cannot be waived by those who administer the civil service rules. *State ex rel. Pioli v. Higher Educ. Personnel Bd.*, 16 Wn. App. 642, 558 P.2d 1364 (1976).

Plaintiff's final contention is that his time as a temporary employee should have been included in his probationary period. Again assuming the presence of a fundamental right because there is no argument to the contrary, plaintiff's contention is answered by Tacoma Municipal Code § 1.24.790,[5] which gives the city discretion

---

[4]Tacoma Municipal Code § 1.24.780 reads, in pertinent part: "Periods of leaves of absence without pay or sick leave with pay shall not be included in computing the probationary period."

[5]Tacoma Municipal Code § 1.24.790 reads:
"The acceptance by an eligible of an emergency or temporary appointment shall not affect his standing on the eligible list for permanent appointment. Such service shall not be counted as part of the probationary period. In case such an appointment immediately precedes permanent appointment, it may, at the discretion of the appointing authority, be counted on the probationary period if such employment is in the same class in the same department."

to count or not to count periods spent as a temporary employee in the probationary period. No evidence of abuse of this discretion appears in the record. Although he is entitled to prevent the city from exercising discretion in an arbitrary and capricious or unlawful manner, plaintiff is not entitled to compel the city to exercise its discretion in his favor. *State ex rel. Ryder v. Pasco,* 3 Wn. App. 928, 478 P.2d 262 (1970).

We conclude that plaintiff's period of probation was properly computed. His termination as a probationary employee rather than a permanent employee was therefore proper. The trial court therefore properly granted summary judgment on these claims.

We now consider whether the trial court erred in granting a summary judgment of dismissal on a claim that the city and its agents inflicted intentional emotional distress on plaintiff. This tortious conduct allegedly occurred when a fellow employee assaulted plaintiff. The city later allegedly ratified this assault.

■ We conclude that the trial court properly dismissed this claim. Plaintiff has an assault claim which was left pending after dismissal of his other claims. In our view, plaintiff may present his claim for intentional infliction of emotional distress as a part of his assault claim. Indeed, an assault claim has long been held to encompass claims for intentional infliction of emotional distress arising out of the assault. Damages for emotional distress may be awarded as part of the assault damages. *Titus v. Tacoma Smeltermen's Local 25,* 62 Wn.2d 461, 383 P.2d 504 (1963). If the proof sustains his position, plaintiff can recover both from the city and from its agent. Dismissal of the independent claim for infliction of emotional distress thus did not prejudice plaintiff, but only streamlined the lawsuit.

The final issue concerns defamation allegations. Plaintiff alleges that he was defamed in two different ways. First he indicates that two letters which the city clerk delivered to the administrative board which reviewed his discharge were defamatory. Secondly, plaintiff alleges he was defamed by

replies made by the city clerk to potential employers who sought references about plaintiff. The trial court dismissed all of these defamation allegations.

We turn first to the letters sent by the city clerk to the administrative board. The City argues strenuously that these letters are absolutely privileged. We do not reach this question because we find no breach of the qualified privilege which plaintiff concedes is applicable in this case on the basis of the opinion in *Twelker v. Shannon & Wilson, Inc.*, 88 Wn.2d 473, 564 P.2d 1131 (1977).

■ A party moving for summary judgment initially has the burden of demonstrating that no genuine issues of material fact exist. *Burris v. General Ins. Co. of America*, 16 Wn. App. 73, 553 P.2d 125 (1976). In this case, affidavits, answers to interrogatories, and excerpts of depositions were put before the court by the City to establish that the city clerk wrote his reports to the administrative board without malice and with a good faith belief that they were true. Once the City made this showing that it was entitled to judgment, plaintiff was compelled to come forward with specific facts, presented by affidavit or as otherwise allowed by CR 56, to establish the existence of a genuine issue for trial. Failure to so respond properly results in issuance of judgment against the nonresponding party. *Carlson v. Milbrad*, 68 Wn.2d 847, 415 P.2d 1020 (1966).

In the present case, plaintiff failed to come forward with evidence that established any questions of material fact about the breach of the qualified privilege. He presented arguments but did not present facts which showed lack of good faith or malice on the part of the city clerk. This being so, summary judgment was properly granted on the basis that the city clerk's reports to the administrative committee were protected by a qualified privilege.

■ We also affirm the trial court with regard to the city clerk's communications with prospective employers of plaintiff. It has long been the rule that such communications enjoy a qualified privilege based on common interest. *Ecuyer v. New York Life Ins. Co.*, 101 Wash. 247, 172 P.

359 (1918). Once again the City introduced evidence sufficient to support judgment for it and plaintiff provided no evidence which created any question of material fact. Summary judgment was thus properly granted in favor of the City on this issue.

Judgment affirmed.

PETRIE and REED, JJ., concur.