[No. 9368–5–II.   Division Two.   August 31, 1987.]

PACIFIC WIRE WORKS, INC., *Appellant,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent.*

*E. Robert Fristoe, Don W. Taylor,* and *Fristoe, Taylor & Schultz (Michael P. Opton* and *Opton & Galton,* of counsel), for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Paul D. Doumit, Assistant,* for respondent.

PETRICH, J.—Pacific Wire Works, Inc. (the Company) appeals from a trial court judgment that affirmed an order of the Board of Industrial Insurance Appeals requiring the reclassification of some of the Company's employees into a higher risk category for the purpose of computing premiums for workers' compensation insurance.

The Company presents three issues for appeal: (1) whether the Department of Labor and Industries regulation requiring that clerical office employees be included in the basic business classification of the employer when they are exposed to the operating hazards of the business is consistent with the statute requiring the Department to classify occupations in accordance with the degree of hazard of such occupation; (2) whether the statute requiring a rating system consistent with recognized principles of workers' compensation insurance is offended by the Department's application of its regulation whereby clerical office employees exposed to the operative hazards of the employer's

business are nevertheless excepted from the basic business classification, when fortuitous circumstances, rather than the employee's duties, produce such exposure; and (3) whether the Company's rights to due process and equal protection were denied by the Department's application of its rule to the Company's operations.

For the reasons set forth below, we affirm.

The Company manufactures various types of wire goods, including shells, racks, baskets and guards. It operates two manufacturing facilities in the state, one in Seattle and one in Lynnwood. In June 1983, the Department of Labor and Industries conducted an audit of the Company to determine if its employees were properly classified for the purpose of computing the required premiums for workers' compensation insurance. The Department's audit was guided in part by a statute, RCW 51.16.035, and in part by a rule promulgated pursuant to that statute, WAC 296–17–440.

As a result of the audit, the Department ordered the Company to pay additional insurance premiums. The order was based in part on the Department's determination that three Company employees should be reclassified from office employees (class 49–4), to metal goods manufacturing employees (class 52–9 and class 34–2), because their duties required them to be exposed to the Company's manufacturing operations. The Company contested the determination because each of the three employees spent less than 10 percent of his time in the operations area, and because the Company claims that other states classify employees in a lower risk category if they spend less than 10 percent of their time in a higher risk area.

## THE STANDARD OF REVIEW

Appeals from the Board [of Industrial Insurance Appeals] are specifically excluded from those portions of the administrative procedure act providing for judicial review. RCW 34.04.150. Review is governed by RCW 51.52.115 and .140. In any court proceeding, the findings and decision of the Board are prima facie correct until

they are found incorrect by the superior court, by a fair preponderance of the evidence. RCW 51.52.115; *Sacred Heart Med. Ctr. v. Carrado,* 92 Wn.2d 631, 600 P.2d 1015 (1979); *Allison v. Department of Labor & Indus.,* 66 Wn.2d 263, 401 P.2d 982 (1965). Judicial review in the Court of Appeals is governed by RCW 51.52.140 which provides in part:

> [T]he practice in civil cases shall apply to appeals prescribed in this chapter. Appeal shall lie from the judgment of the superior court as in other civil cases.
> . . . Our review is then whether the trial court's findings of fact, to which error has been assigned, are supported by substantial evidence, and whether its conclusions of law flow therefrom. . . .

*Lloyd's of Yakima Floor Ctr. v. Department of Labor & Indus.,* 33 Wn. App. 745, 747–48, 662 P.2d 391 (1982).

Here, it is clear from the record that the trial court adopted the Board's factual findings as its own. None of the findings have been challenged. Moreover, the questions presented are essentially questions of law.

We now reach our first issue, whether the Department's regulation is consistent with statutory authority.

RCW 51.16.035 provides in pertinent part:

> *The department [the Department of Labor and Industries] shall classify all occupations or industries in accordance with their degree of hazard* and fix therefor basic rates of premium which shall be the lowest necessary to maintain actuarial solvency of the accident and medical aid funds in accordance with recognized insurance principles. *The department shall formulate and adopt rules and regulations* governing the method of premium calculation and collection and *providing for a rating system consistent with recognized principles of workers' compensation insurance* which shall be designed to stimulate and encourage accident prevention and to facilitate collection. . . .

(Italics ours.)

Under the regulatory scheme of chapter 296–17 of the Washington Administrative Code, the Department adopts basic classifications for various businesses and industries. The classifications consist of grouping businesses and

industries having common or similar exposures to industrial injuries or illnesses without regard to the separate employments or operations of the employer's work force. Rates are assigned to the basic classification for the purpose of calculating the employer's premiums for workers' compensation insurance. However, there are standard exceptions to the basic classification.

The standard exceptions are incorporated in WAC 296–17–440. This appeal challenges this regulation and its application to the Company's operations.

WAC 296–17–440 provides in pertinent part that:

> Standard exceptions. The following employments referred to as standard exceptions are to be separately rated . . .
>
> The standard exceptions are defined below:
>
> (1) Clerical office employees are defined as those employees whose duties are confined to keeping the books or records of the employer, or conducting correspondence or who are engaged wholly in office work where such books or records are kept or where such correspondence is conducted, having no other duty of any nature in or about the employer's premises. *If any clerical office employee is exposed to any operative hazard of the business, their entire worker hours shall be assigned to the highest rated classification of work to which they are exposed.* The clerical office classification shall be applied only to persons as herein described who are employed exclusively in separate buildings or on separate floors of buildings or in departments on such floors which are physically separated from all other work areas of the employer by structural partitions and within which no work is performed other than clerical office duties as defined in this paragraph.
>
> (2) Draftsmen will be considered to be clerical office employees when their duties are limited to office work only and who are engaged strictly as draftsmen in such a manner that they are not exposed to the operative hazard of the business. *If any draftsman is exposed to any operative hazard of this business, their entire worker hours shall be assigned to the highest rated classification of work to which they are exposed.*

(Italics ours.)

■ "An agency's rules must be encompassed within its statutory framework." *Hi–Starr, Inc. v. Liquor Control Bd.,* 106 Wn.2d 455, 459, 722 P.2d 808 (1986).

> Administrative rules adopted pursuant to a legislative grant of authority are presumed valid and will be upheld on judicial review if reasonably consistent with the enabling legislation. The party attacking the validity of an administrative regulation has the burden of presenting compelling reasons why the regulation is in conflict with the intent and purpose of the statute being implemented.

(Citations omitted.) *Vliet v. Department of Labor & Indus.,* 30 Wn. App. 709, 712, 638 P.2d 112 (1981), *review denied,* 97 Wn.2d 1002 (1982).

Moreover, in determining whether a rule is valid, "the reviewing court may not substitute its judgment for that of the agency." *Brannan v. Department of Labor & Indus.,* 104 Wn.2d 55, 60, 700 P.2d 1139 (1985).

Here, the rule requires that where any clerical office employees or draftsmen are exposed to the operative hazards of the business, all of their worker hours must be assigned to the highest classification for that business (basic classification). The Company argues that including a clerical employee within the Company's higher classification does not comply with the statute requiring classification in accordance with the degree of hazard when the employee's exposure to the operative hazards is minimal. The Company argues that the degree of hazard of a clerical employee exposed to the employer's operative hazard for a minimum period of time does not equate to the degree of hazard of a machine operator. However true that may be, the statute does not require the Department to classify employees by risk within each occupation. *Pan Pac. Trading Corp. v. Department of Labor & Indus.,* 88 Wn.2d 347, 560 P.2d 1141 (1977). Obviously a clerical employee who is not exposed to any operative hazards is in a lower risk category than one who is so exposed. Thus, we are satisfied that the regulation is consistent with the statute, RCW

51.16.035, which requires the classification of occupations in accordance with their degree of hazard. We conclude that the rule is "reasonably consistent with its enabling legislation."

The next issue is "whether the application of WAC 296–17–440 is consistent with recognized principles of workers' compensation."

When construing an administrative rule, it is reasonable to give terms their ordinary, common, everyday meaning. *Gaylord v. Tacoma Sch. Dist. 10,* 88 Wn.2d 286, 291, 559 P.2d 1340, *cert. denied,* 434 U.S. 879 (1977). "[R]egulation should, whenever possible, be interpreted so that no portion of it is superfluous, void, or insignificant." *Hayes v. Yount,* 87 Wn.2d 280, 290, 552 P.2d 1038 (1976). Moreover, "[w]hile . . . an agency has some discretion in interpreting ambiguous statutes, it may not alter or amend an act, and its interpretation must be within the framework and policy of the statute." *Burlington Northern, Inc. v. Johnston,* 89 Wn.2d 321, 326, 572 P.2d 1085 (1977).

Here, the Department interprets its rule, WAC 296–17–440, as follows: (1) a clerical or drafting employee who might have "merely fortuitous" exposure to normal plant operations, *i.e.,* to use a restroom, or to take his break with plant employees, remains classified in the lower classification for clerical and drafting personnel (the "merely fortuitous rule"); but (2) if the normal *duties* of a clerical or drafting employee *require any* exposure to the plant's operative hazards, then the employee must be placed in the classification assigned to the operative hazards of the business. The Company disagrees with the Department's interpretation and application of the rule. It argues that the Department must interpret WAC 296–17–440 by an interpretive rule called "the 10% rule" if its application is to be "consistent with recognized principles of workers' compensation".

Under "the 10% rule", an employee, (such as each of the three Company employees), exposed to the higher risk category of the operative hazards of his employer for less than

10 percent of his time, is classified in the lower risk category as allowed by the exception, and his higher risk exposure is overlooked.

The Company's argument is based on its claim that many other states, as well as the National Counsel on Compensation Insurance, use this 10 percent rule to interpret regulations similar to the rule at issue here, WAC 297–17–440. The Department's interpretation of the rule (that employees be placed in a higher category if any of their duties require them to be exposed to the business's operative hazards) is consistent with the rule's literal language: "if any clerical office employee [or draft person] is exposed to any operative hazard of the business, their entire worker hours shall be assigned to the highest rated classification of work to which they are exposed."

An agency acting within the ambit of its administrative functions normally is best qualified to interpret its own rules, and its interpretation is entitled to considerable deference by the courts. *State Utils. & Transp. v. United Cartage, Inc.*, 28 Wn. App. 90, 95, 621 P.2d 217 (1981). While the adoption of a 10 percent rule by the Department might also pass judicial scrutiny, we cannot say that the Department's interpretation requiring the higher classification when the employee's duties necessarily exposes that employee to a higher risk is contrary to "recognized principles of workers' compensation".

The Company also argues that the Department's application of WAC 296–17–440 is actually an unwritten amendment to that rule. This argument must also fail. Again, the Department's application consists of two interpretive rules, the "merely fortuitous rule" and the "duties rule." As discussed above, the "duties rule" is consistent with the literal language of WAC 296–17–440; thus its use cannot constitute an amendment to WAC 297–17–440. Moreover, with regard to whether the Department's use of the "merely fortuitous rule" is an amendment to WAC 296–17–440, we find that the Company lacks standing to make the challenge.

[A] party challenging an administrative action must possess standing, . . . Standing has been defined as a presently existing, substantial interest in the subject matter of the suit which will be affected by the relief granted. The presence of some violation of law is not sufficient if the party challenging an action lacks standing to challenge the violation.

(Citation omitted.) *Bankhead v. Tacoma,* 23 Wn. App. 631, 635, 597 P.2d 920 (1979). Here, the "merely fortuitous rule" did not cause the Company's three employees to be placed in the higher classification. Rather, they were placed there through the use of the "duties rule" (and the nonuse of the "10 percent rule.") Therefore, as the Company does not have a "presently existing substantial interest" in having the "merely fortuitous rule" set aside, it does not have standing to make the challenge.

We now address whether the Department's application of WAC 296–17–440 violates the Company's right to due process because it is void for vagueness.

■ The void for vagueness test is only appropriate with regard to a regulatory statute that prohibits certain types of conduct and imposes sanctions for the violation of its standards. *Hi–Starr, Inc. v. Liquor Control Bd.,* 106 Wn.2d at 465. Here, the rule at issue, WAC 296–17–440, does not constitute such a regulatory statute. Thus, the void for vagueness test is not appropriate here.

■ Finally, we reach our last issue, whether the Department's application of the rule denies the Company equal protection of the law.

An ordinance is presumed constitutional and the party challenging the classification has the heavy burden of overcoming this presumption. An ordinance should not be declared unconstitutional unless it appears unconstitutional beyond a reasonable doubt.

At the threshold of any equal protection determination, the court must identify the appropriate standard of judicial review. In cases that involve neither a suspect classification, nor a fundamental right, this court applies the rational basis test. Under the rational basis test the court must determine: (1) whether the legislation applies

alike to all members within the designated class; (2) whether there are reasonable grounds to distinguish between those within and those without the class; and (3) whether the classification has a rational relationship to the purpose of the legislation.

(Citations omitted.) *Convention Ctr. Coalition v. Seattle,* 107 Wn.2d 370, 378–79, 730 P.2d 636 (1986).

The case at bar does not involve either a suspect classification nor a fundamental right. Thus, the correct test to be applied here is the rational basis test.

The Company argues that the Department's application of WAC 296–17–440 (in combination with the merely fortuitous rule), discriminates against small businesses (such as Pacific Wire Works), in favor of big businesses. When we apply the rational basis test to that allegation, we find that the Company's right to equal protection has not been denied.

### 1. Alike Application

All businesses qualify for the standard exception if their employees have no duties which require the employees to enter the operations area, or if their employees enter the operations area fortuitously.

### 2. Reasonable Grounds

The asserted "reasonable grounds" for the "duties rule" is that persons with duties in the operation area are exposed to higher risk. With regard to the merely fortuitous rule, the Department does not assert any grounds. However, the Company asserts that the rule is more workable than a strict application of WAC 296–17–440. Thus, there are reasonable grounds for both aspects of the application of WAC 296–17–440.

### 3. Legislative Purpose

Finally, the purpose of the legislation is to classify occupations based on the workers' exposure to hazards of the workplace, and to maintain actuarial solvency. RCW 51.16-.035. Classifying employees according to the risk of their duties seems consistent and/or has a rational relationship

with this purpose.
   Affirmed.

ALEXANDER, A.C.J., and WORSWICK, J., concur.