177 P.3d 143 (2008)
D.W. CLOSE COMPANY, INC., a Washington corporation, and Burke Electric, L.L.C., a Washington limited liability company, Appellants,
v.
WASHINGTON STATE DEPARTMENT OF LABOR AND INDUSTRIES, Respondent. and
Rebound, a building Trades Organization, Intervenor.
No. 58444-8-I.
Court of Appeals of Washington, Division 1.
February 11, 2008.
*146 Russell Louis Perisho, Andrew L. Greene, Perkins Cole LLP, Seattle, WA, for Appellants.
Anastasia R. Sandstrom, Attorney General's Office, Seattle, WA, for Respondent.
Saphronia R. Young, Law Offices of Saphronia Young PLLC, Auburn, WA, for Intervenor.
APPELWICK, C.J.
¶ 1 The Washington Department of Labor and Industries (Department) filed notices of violation against D.W. Close and Burke Electric for failure to comply with the Prevailing Wage Act (Act) that allegedly occurred during the installation of the sound and data systems in Seattle's McCaw Hall. Workers from both companies pulled low voltage wiring through conduit of more than 10 feet in length during the installation of these systems and were compensated as "electronic technicians." The Department contends that this job is covered by the "inside wireman" scope of work in WAC 296-127-01323 requiring a higher prevailing wage; D.W. Close and Burke contend that such work falls under the "electronic technician" scope of work in WAC 296-127-01322. The Administrative Law Judge (ALJ), director of the Department, and the superior court all agreed on the interpretation of WAC 296-127-01323 and ordered the Employers to pay additional wages for time spent performing inside wireman work. The superior court also upheld the validity of the WAC provision. D.W. Close and Burke appeal and challenge the validity of the "electronic technician" scope of work. We affirm.

FACTS
¶ 2 D.W. Close Company, Inc. and Burke Electric L.L.C. (together, the Employers) were subcontractors involved in the installation of low voltage wiring during the construction of McCaw Hall. D.W. Close installed security and, voice/data systems for McCaw Hall. Burke Electric. L.L.C. installed the sound system, the audiovisual system and the intercom/paging system. During this work, employees for the Employers pulled low voltage wiring through conduit to control panels, terminals or end devices. The wires were pulled through conduit greater than 10 feet in length, sometimes for 100s of feet.
¶ 3 As a public project, the McCaw Hall construction was subject to the Act. The Employers were required to pay their workers no "less than the prevailing rate of wage for an hour's work in the same trade or occupation in the locality." RCW 39.12.020. For the purposes of the Act, the Department *147 created regulations within the Washington Administrative Code (WAC) that designate scope of work descriptions for each trade and occupation involved in public work. WAC 296-127-013. The scope of work for "electronic technicians" and for "inside wireman electrician" each cover pulling wire through conduit. WAC 296-127-01322, 01323. D.W. Close and Burke both employed "electronic technicians," most of whom were not authorized to perform inside wireman work. These workers were paid wages well above the prevailing wage for electronic technicians, but were not paid the prevailing wage for inside wireman.
¶ 4 As one means of overseeing compliance with prevailing wage laws, labor unions used member dues to fund Rebound, a non-profit organization which monitors and investigates public works projects. In January 2003, Greg Boyd, president of Rebound and a union organizer, and David Hellene, a Rebound investigator, approached D.W. Close workers about their work on the McCaw Hall project. The two Rebound representatives concluded that inside wiremen should have performed the long wire pulls through conduit, instead of electronic technicians. The men spoke with D.W. Close's management but could come to no resolution on this issue so they filed a wage complaint alleging violation of the Act. After the wage complaint, Rebound engaged in factual investigation of the claim. The Department's prevailing wage investigator, James Ashcraft provided time cards and job codes for Rebound's analysis. Rebound prepared a spreadsheet showing the amount of time employees spent performing inside wireman and electronic technician tasks. This information was turned over to the Department to support the wage complaint.
¶ 5 In August 2003, three Burke employees filed wage complaints against the company, alleging that they pulled wire through conduit longer than 10 feet. James Ashcraft also provided Rebound with time card and job code data and allowed the organization to assist with the investigation into these complaints. Rebound prepared a similar spreadsheet showing the time that Burke employees spent on inside wireman work.
¶ 6 Ashcraft wrote the Employers outlining his contentions and met with them in order to allow them an opportunity to provide data showing they did not violate prevailing wage laws. The Employers believed electronic technicians could perform all of the work. The Department issued a notice of violation against D.W. Close in November 2003 and against Burke in March 2004. The Employers appealed and received an evidentiary hearing in front of an ALJ. The ALJ found that the Employers had underpaid the workers; he also found the rule invalid but acknowledged that he had no authority to. determine validity. The Employers appealed to the director, who agreed with the Department's interpretation, but struck all findings and conclusions related to the validity of the electronic technician rule. The director's findings of facts and conclusions superseded those entered by the ALJ.
¶ 7 Finally, the Employers appealed to King County Superior Court challenging the director's order, the interpretation of the electronic technician scope of work, Rebound's status as an interested party and declaratory judgment on the validity of the rule. The superior court found that the electronic technician rule applies only to wire pulled through conduit less than 10 feet. The court also found that substantial evidence supported the director's order, that Rebound is an interested party, and that the rule was not arbitrary and capricious.

DISCUSSION
¶ 8 The Washington Administrative Procedure Act (WAPA) allows reversal of an administrative decision "when inter alia: (1) the administrative decision is based on an error of law; (2) the decision is not based on substantial evidence; or (3) the decision is arbitrary or capricious." Tapper v. Employment Sec., 122 Wash.2d 397, 402, 858 P.2d 494 (1993) (emphasis added) (citing RCW 34.05.570(3)). In this case, the Employers challenge the Department's decision as both arbitrary and capricious arid based on erroneous interpretations and applications of law under RCW 34.05.570(3)(d), (i). The Employers bear the burden of demonstrating *148 that the Department's action was invalid, RCW 34.05.570(1).
¶ 9 In reviewing an administrative action, the appellate court sits in the same position as the superior court. Tapper, 122 Wash.2d at 402, 858 P.2d 494. "An appellate court accepting an appeal from an agency decision applies the proper standard of review directly to the record of the administrative proceedings and not to the findings and conclusions of the superior court." Brandley v. Employment Sec., 23 Wash.App. 339, 342, 595 P.2d 565 (1979). An agency's interpretation of a statute or regulation is an issue of law subject to de novo review. Port of Seattle v. Pollution Control, 151 Wash.2d 568, 593, 90 P.3d 659 (2004). The appellate court may substitute its interpretation for that of the agency. Id. But, we must "accord substantial weight to the agency interpretation." Everett Concrete Prods. v. Labor & Indus., 109 Wash.2d 819, 823, 748 P.2d 1112 (1988). The "Mules of statutory construction apply to administrative regulations." State v. Burke, 92 Wash.2d 474, 478, 598 P.2d 395 (1979). The initial examination focuses on the plain language of the regulation. "If an administrative rule or regulation is clear on its face, its meaning is to be derived from the plain language of the provision alone." Cannon v. Dep't of Licensing, 147 Wash.2d 41, 56, 50 P.3d 627 (2002). "[R]egulations are interpreted as a whole, giving effect to all the language and harmonizing all provisions." Id. at 57, 50 P.3d 627.
¶ 10 WAC 296-127-01322 enumerates the scope of work for "electronic technicians" for the purposes of the Act.
(1) The installation, operation, inspection, maintenance, repair and service of:
(a) Radio, television and recording systems and devices.
(b) Systems for paging, intercommunication, public address, wired music, clocks, security and surveillance systems and mobile radio systems.
(c) Fire alarm and burglar systems.
(2) The installation of nonmetallic conduits and incidental shielded metallic conduits of no longer than ten feet nor larger than one inch, when installed for the specific purpose of carrying low voltage wiring.
(3) Pulling wiring through the type of conduit described under subsection (2) of this section, when the wiring is installed for the specific purpose of carrying low voltage electricity.
(4) All the cleanup required in connection with electronic technician's work.
Both the Employers and the Department contend that the scope of work in WAC 296-127-01322 is clear on its face. They also agree that workers pulled wire through conduits longer than 10 feet. However, each ascribes a different meaning to this clear language.
¶ 11 According to the employer's interpretation, this regulation allows electronic technicians to perform any work associated with installation of the systems included in subsection (1). Under this interpretation, pulling low voltage wiring through conduit of greater than 10 feet is within the electronic technician scope of work if performed during the installation of an enumerated system. Further, they urge that subsections (2) and (3) provide authorization to install conduit and pull wire independent of the installation of systems listed in subsection (1). The Department interprets subsections (2) and (3) as limitations upon (1), such that the electronic technician scope of work only allows for pulling wires through conduit less than 10 feet, even during installation of the specified systems. Answering the question of law, whether the regulation permits electronic technicians to pull wire through conduit longer than 10 feet, resolves the prevailing wage question.
¶ 12 In order to properly resolve the application of WAC 296-127-01322, we must examine the provision alongside the inside wireman scope of work in WAC 296-127-01323. That scope of work sets out the general description that "inside wireman electricians plan the layout, install and repair conduit, wiring, electrical fixtures, apparatus, and control equipment in buildings and adjacent yards to provide electricity for power and lighting" and then a long list of specific examples of such. work. WAC 296-127-01323. This scope of work covers all electrical *149 workboth low and high voltage. Inside wiremen can perform any of the tasks delineated under the electronic technician scope of work. The inside wireman scope is the general provision that governs the prevailing wage for electrical work not specifically delineated to electronic technicians. Thus, the electronic technician scope of work essentially carves a low voltage systems niche out of the inside wireman scope and allows for these enumerated tasks to be performed at a lower pay rate.
¶ 13 Installing conduit and pulling wire through conduit is within the scope of work of an inside wireman. The authority for the electronic technicians carved out in subsection (3) of, their scope of work allows them to pull wire through the type of conduit authorized to be installed in subsection (2). The type of conduit to be installed under subsection (2) is nonmetallic conduits and incidental shielded metallic conduits, but not any nonmetallic conduit or any incidental shielded metallic conduits. It is limited to those conduits neither longer than 10 feet nor larger than one inch around and only when installed for the purpose of carrying low voltage electricity. Subsection (3) would not authorize the pulling of low voltage wire through conduit lengths of greater than 10 feet. Therefore, this section would not authorize the cable pulling at issue in this case. This appears not to be in dispute.
¶ 14 However, the Employers argue that the subsections are independent and that subsections (2) and (3) are broader than subsection (1). In essence, they argue section (1) is narrower because it applies to a finite list of enumerated systems. They also argue it contains no limitation on conduit installation or wire pulling. Subsections (2) and (3) they argue are broader because they apply to all other low voltage systems, but they impose limitations on that broader category. Beyond the inference the Employers ask us to draw, the record offers no evidence that low voltage systems other than those listed in subsection (1) exist and were contemplated to be carved out of inside wireman's scope of work. This reading is too strained to carry the burden of persuading us that the Department misinterpreted the rule.
¶ 15 Both parties claim the language is clear on its face. However, they argue it means very different things. Their argument makes a strong case to consider the language ambiguous. If the language is ambiguous, the agency's interpretation is accorded great weight. Pasco v. PERC, 119 Wash.2d 504, 507-08, 833 P.2d 381 (1992). "An agency acting within the ambit of its administrative functions normally is best qualified to interpret its own rules, and its interpretation is entitled to considerable deference by the courts." Pacific Wire Works v. Dep't. of Labor & Indus., 49 Wash.App. 229, 236, 742 P.2d 168 (1987) (citing Wash. Utils. & Transp. Com. v. United Cartage, Inc., 28 Wash.App. 90, 95, 621 P.2d 217 (1981)). If we look to the director's findings of fact 39 and 40, we can see that the Department previously communicated with both employee representatives and employer representatives, as far back as 1992, indicating an interpretation of the scope of work in which subsections 2 and 3 are limitations on the work authorized in subsection 1. This accords with our reading of the regulation. We conclude that subsection 1 is a general statement of the scope of work and that subsections 2 and 3 are limitations on the conduit installation and wire pulling to be done in those authorized installations.
¶ 16 This construction of WAC 296-127-01322 coincides with the purposes of the Prevailing Wage Act: "(1) to protect employees working on public projects from substandard wages and (2) to preserve local wages." Heller v. McClure & Sons, Inc., 92 Wash.App. 333, 338, 963 P.2d 923 (1998). An interpretation that excludes electronic technicians from pulling low voltage wiring through more than 10 feet of conduit means that this task belongs to a higher paid inside wireman. As the statute intends, this protects the worker, not the contractor. Id.
¶ 17 The Employers concede that several employees pulled wire through conduit greater than 10 feet in length, thus exceeding the electronic technician scope of work. The inside wireman scope is the only other scope that addresses pulling wire through conduit. As such, WAC 296-127-01323 *150 governs the task as it applies to conduit greater than 10 feet. Therefore, the time spent pulling wire through conduit greater than 10 feet should reflect the prevailing wage for inside wiremen. The Employers violated the Act and owe the employees who performed such work the wages they are entitled under the inside wireman scope of work. We affirm the director's decision.
II. WAG XXX-XXX-XXXXX Is Not Invalid
¶ 18 In their challenge to the validity of WAC 296-127-01322, the Employers contend that the rule exceeded the Department's statutory authority and is arbitrary and capricious. They allege that the scopes of work did not accurately reflect industry practice when adopted and that the Department did not comply with its own rule requiring use of "authoritative sources" to create scopes of work. A rule exceeds the agency's authority if it conflicts with a statute. Devine v. Dep't of Licensing, 126 Wash.App. 941, 956, 110 P.3d 237 (2005). The Employers point to nothing in the statute that is violated by WAC 296-127-01322.
¶ 19 A rule is arbitrary and capricious "if it is willful and unreasoning and taken without regard to the attending facts or circumstances." Wash. Indep. Tel. Ass'n v. WUTC, 148 Wash.2d 887, 905, 64 P.3d 606 (2003). If "there is room for two opinions, an action taken after due consideration is not arbitrary and capricious." Hillis v. Dep't of Ecology, 131 Wash.2d 373, 383, 932 P.2d 139 (1997). In a rulemaking challenge, "the agency's rule-making file serves as the record." Musselman v. DSHS, 132 Wash.App. 841, 853, 134 P.3d 248 (2006). However, the file "need not be the exclusive basis for agency action on that rule." RCW 34,05,370(4); Wash. Indep., 148 Wash.2d at 906, 64 P.3d 606. The reviewing court must consider the rulemaking file "and the agency's explanations for adopting the rule." Id.
¶ 20 "The scope of work descriptions shall be created using authoritative sources available to the department." WAC 296-127-013(2). The regulation gives examples of "authoritative sources": "such as: (a) Washington state apprenticeship and training council approved apprenticeship standards; (b) Collective bargaining agreements; (c) Dictionaries of occupational titles; (d) Experts from organized labor, licensed contractors, and contractors' associations; (e) Recognized labor and management industry practice." WAC 296-127-013(2). The inclusion of the language "such as" implies that "authoritative sources" are not limited to those listed. However, WAC 296-127-013 provides no further information about the process of creating or codifying scope of work descriptions.
¶ 21 The administrative record reflects that the scope of work was created by George May (May) in 1989 and was formally adopted as a WAC in 2000. May no longer. works for the Department and was not available as a witness. As a result the Department did not produce evidence of sources consulted in 1989 because "it is unknown exactly what [May] relied upon to draft the scopes of work."[1] The rulemaking file does not contain information about the sources consulted in 2000. However, this should not be fatal to WAC 296-127-01322 because of the evidence that the Department consulted the necessary sources at times prior to the rulemaking and complied with the rulemaking procedures required by the WAPA.
¶ 22 While the scope of work was originally crafted in 1989, Jim Christensen (Christensen), Industrial Statistician from 1992 to 2003, reviewed the description during his tenure. Evidence shows that he looked into the accuracy of the scope around 1993 and found no reason to change. Christensen apparently reevaluated the scope again in 1996, after writing a letter in which he admitted the electronic technician scope might need revision. At the nJ hearing, Christensen testified that during these periodic reviews he examined collective bargaining agreements and licensing requirements and interviewed labor and management representatives *151 about industry practice pertaining to the electronic technician scope. Despite these repeated and extensive consultations, he did not receive consistent answers from labor and management that allowed him to feel confident about a revision to the scope of work. Christensen testified that he "never developed a vision ofa consistent vision of industry practice sufficient to warrant modification of the scope." He said the scope "was the [d]epartment's best estimation of what industry practice was. Notwithstanding all the criticism it got, it was still the [d]epartment's best guess."
¶ 23 In fact, evidence presented to the ALJ showed that the Department's scope of work was accurate with respect to industry practice. Greg Boyd, an organizer for the International Brotherhood of Electrical Workers Local 46, testified that it was industry practice for inside wireman, rather than electronic technicians, to perform the majority of low voltage work involving long wire pulls.
¶ 24 The Department's decision in 2000 to codify the scope of work policies into the WAC rules verbatim may have been the "easy way" as admitted by Christensen. The scopes of work were based on investigation and weighing performed by the Industrial Statistician after receiving information that the scopes of work might not have been accurate. They resulted from a choice between opinions taken after due consideration. The fact that the Department adopted them verbatim cannot be considered arbitrary and capricious in light of this analysis.
¶ 25 Promulgation of WAC 296-127-01322 was not arbitrary and capricious. It clearly reflects one view of industry practice and was not "willful and unreasoning and taken without regard to the attending facts or circumstances." Wash. Indep., 148 Wash.2d at 905, 64 P.3d 606. In addition, while the sources used by George May to create the original scope of work in 1989 are unknown, Christensen used listed "authoritative sources" to reevaluate the description prior to the 2000 rulemaking. The Department did not make an inaccurate a inappropriate regulation, so it did not exceed its authority.
III. Deleted Findings of Fact
¶ 26 Under WAPA, administrative rules and the rulemaking process are subject to judicial review. Any challenge to administrative rules must be brought as a petition for declaratory judgment in Thurston County Superior Court. RCW 34.05.570(2)(b); Kettle Range v. Dep't Natural Resources, 120 Wash.App. 434, 458, 85 P.3d 894 (2003). If the challenge relates to the agency's statutory authority to promulgate a rule and, therefore its invalidity, the claim should be brought in Thurston County Superior Court. Dioxin/Drganochlorine Center v. Dep't of Ecology, 119 Wash.2d 761, 770, 837 P.2d 1007 (1992). As a result, the employer's claim that the adoption of WAC 296-127-01322 exceeded the Department's statutory authority and was arbitrary and capricious is within the purview of the judiciary, not agency review. The ALJ's findings on the accuracy of the scope of work in WAC 296-127-01322 relate to the validity of the rule and are not material to the issues before the agency for reviewthe application of the WAC to the conduct of the Employers. The director's deletion of the findings of fact relating to the validity of the WAC was not arbitrary and capricious since those findings were unnecessary to support the decisions concerning application of the rule to the facts of the case.
¶ 27 In addition, under WAPA, the director has the authority to substitute its findings for those of the ALJ. RCW 34.05.464(4); Towle v. Dep't of Fish & Wildlife, 94 Wash.App. 196, 209, 971 P.2d 591 (1999). Such substitutions must be supported by substantial evidence and cannot be arbitrary and capricious. Towle 94 Wash. App. at 209, 971 P.2d 591. "An action is arbitrary or capricious when the governmental body reaches its decision `willfully and unreasonably, without consideration and in disregard of facts or circumstances.'" Id. (quoting Breuer v. Fourre, 76 Wash.2d 582, 584, 458 P.2d 168 (1969)). Orders must include "a statement of findings and conclusions, and the reasons and basis therefor, on all the material issues of fact, law or discretion presented on the record." RCW 34.05.461(3). The director deleted the ALJ's *152 findings 42-56, related to "Mnvalid scope of work." These findings discussed the rule-making procedure behind WAC 296-127-01322. The director also deleted findings 57-69 which discuss Rebound's involvement in the report and investigation.
¶ 28 The ALT determined that Rebound's involvement did not necessitate dismissing the complaint or finding the wage claims invalid. Since these findings of fact do not support the employer's claim, their exclusion was harmless.
IV. Rebound is an "Interested Party"
¶ 29 The Act requires the Department to undertake investigation of possible violations "[u]pon complaint by an interested party." RCW 39.12.065(1). "Interested party" is defined as "a contractor, subcontractor, an employee of a contractor or subcontractor, an organization whose members' wages, benefits, and conditions of employment are affected by this chapter, and the director of labor and industries or the director's designee." RCW 39.12.010(4). D.W. Close argues that Rebound is not an "interested party" and that its involvement was improper. According to D.W. Close, the wage complaint should be dismissed because only the Department or an "interested party" can initiate a complaint.
¶ 30 Rebound is a nonprofit corporation that investigates and monitors compliance with wage laws on public works projects on behalf of member labor unions. Rebound's membership includes building trade unions including seven electrician unions. The organization is funded by assessment on participating union members' wages. The individual unions are not represented by union workers but union-employed executives. Rebound's current president is Greg Boyd from Local 46, an electrician union. The director concluded that "[t]here is a direct enough relationship to treat the workers as members of Rebound and it is an `interested party' for purposes of RCW 39.12.010(4)."
¶ 31 Rebound is an interested party if it is "an organization whose members' wages, benefits, and conditions of employment are affected by [the Prevailing Wage Act]." RCW 39.12.010(4). Rebound does not fit the strictest definition of "interested party." However, unions, some of which represent electricians, make up Rebound's membership. The wages of the members of these unions are directly affected by the Act. This impact on workers provides a connection between the wages and conditions of employment of union workers and Rebound. Nothing says an interested party may not employ a representative to press its interest.
¶ 32 In addition, the Prevailing Wage statute is remedial and should be liberally construed to affect its purpose. Liberal construction of the statute would lead to a determination that Rebound is an "interested party."[2] The Act was designed to protect employees working on public projects and preserve local wages. Heller v. McClure & Sons, 92 Wash.App. 333, 338, 963 P.2d 923 (1998). "[lit is the worker, not the contractor, who is the intended beneficiary." Id. As an organization that "monitors and investigates public works projects on behalf of member labor unions for compliance with prevailing wage laws," Rebound's very existence furthers the goals of the Act. Preventing an organization with resources dedicated to such monitoring and investigating from filing wage complaints as an "interested party" would only limit the protections of the Act at a detriment to workers.
¶ 33 Rebound also urges acceptance of its role as an "interested party" because it has been allowed to intervene in other cases. However, in the case cited, Rebound intervened directly in the lawsuit[3] after completion of the investigation, not through initiation *153 of a wage complaint as an "interested party." See, City of Spokane v. Labor & Indus., 100 Wash.App. 805, 809, 998 P.2d 913 (2000). This argument does not support Rebound's claim that it is an "interested party."
¶ 34 Even if Rebound is not an interested party, the Department had the independent authority to investigate the violations. While RCW 39.12.065(1) obligates the Department to investigate upon complaint of an "interested party" the statute does not limit the Department's ability to investigate on its own initiative. The Department is required to enforce wage claims and may investigate any possible violations. "The department of labor and industries may: (a) upon obtaining information indicating an employer may be committing a violation under chapter[ 39.12. RCW, conduct investigations to ensure compliance." RCW 49.48.040(1). According to this statute, the Department may undertake a Prevailing Wage Act investigation upon receiving any information about a possible violation, regardless of the source. In this case, the Department undertook an investigation after receiving information that D.W. Close may have been violating chapter 39.12 RCW. The Department was entirely within its statutory authority to investigate this information. The investigation was not improper.
V. Fees on Appeal
¶ 35 The Employers and Rebound request fees on appeal. The Employers lodge their request under RCW 39.12.065(1) and RCW 4.84.350 which both award fees to prevailing parties. Since the Employers do not prevail on this appeal, they do not receive fees.
¶ 36 Rebound requests fees under RAP 18.9(a) because the employer's appeal is frivolous "where Rebound's status as an interested party has been recognized in prior published court opinions. D.W. Close and Burke Electric have never attacked those published opinions directly, and by ignoring precedent, render their appeal as to Rebound entirely frivolous." However, as stated above, the precedent cited does not address Rebound's role as an "interested party" under RCW 39.12.010(4). Instead, Rebound intervened in the action under CR 24. The Employers do not ignore precedent and did not file a frivolous appeal.
¶ 37 Rebound also alleges eligibility for fees under the Anti-SLAPP (Strategic Lawsuit Against Public Participation) statutes, RCW 4.24.500, et seq. Under RCW 4.24.510:
[a] person who communicates a complaint or information to any branch or agency of federal, state, or local government, or to any self-regulatory organization that regulates persons involved in the securities or futures business and that has been delegated authority by a federal, state, or local government agency and is subject to oversight by the delegating agency, is immune from civil liability for claims based upon the communication to the agency or organization regarding any matter reasonably of concern to that agency or organization. A person prevailing upon the defense provided for in this section is entitled to recover expenses and reasonable attorneys' fees incurred in establishing the defense and in addition shall receive statutory damages of ten thousand dollars. Statutory damages may be denied if the court finds that the complaint or information was communicated in bad faith.
The Anti-SLAPP statute applies when a communication to influence a governmental action results "in (a) a civil complaint or counterclaim (b) filed against nongovernment individuals or organizations . . . on (c) a substantive issue of some public interest or social significance." Right-Price Recreation v. Connells Prairie, 146 Wash.2d 370, 382, 46 P.3d 789 (2002) (quoting George W. Pring & Penelope Canan, SLAPPS: Getting Sued For Speaking Out 8-9 (1996)).
¶ 38 Rebound's reports to the Department did not result in a complaint or counterclaim against them. The Employers did not bring, a claim against Rebound. Instead, the organization's role in the litigation was voluntaryas an intervenor under CR 24. Rebound faces no liability as a result of a judgment in this case. The Anti-SLAPP *154 statutes do not apply. No fees are awarded on appeal.
¶ 39 We affirm.
WE CONCUR: SCHINDLER, A.C.J., and ACID, J.
NOTES
[1] The administrative record includes the director's findings of fact in a previous case, Triad Electrical Contractors v. Dep't of Labor & Industries (1991), which included a finding that George May, the Industrial Statistician considered data that "included, but was not limited to, collective bargaining agreements, the Dictionary of Occupational Titles and wage surveys."
[2] Supporters of the Center, Inc. v. Moore, 119 Wash.App. 352, 80 P.3d 618 (2003), concerns a Prevailing Wage claim where the Pacific Northwest Regional Council of Carpenters filed an "interested party complaint" with the DLI, to initiate an investigation. This organization's role as an "interested party" was not questioned in the opinion. However, the opinion does not describe the membership of the organization. Rebound's brief mentions this case as an example of another interested party, but does not provide any comparisons about membership in its organization and the Pacific Northwest Regional Council of Carpenters.
[3] Presumably under CR 24.