# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION  II

| | |
|---|---|
| SIGNATURE HEALTHCARE SERVICES, LLC, a Michigan limited liability company, | No.  50109-1-II |
| Respondent, | |
| v. | |
| WASHINGTON STATE DEPARMENT OF HEALTH, a Washington governmental agency; | |
| Petitioner, | |
| SPRINGSTONE, LLC, a Delaware limited liability company, | UNPUBLISHED OPINION |
| Respondent Intervenor. | |

WORSWICK, J. — In 2014, both Signature Healthcare Services LLC (Signature) and

Springstone LLC (Springstone) filed certificate of need (CN) applications with the Department

of Health (Department) to build psychiatric hospitals in Clark County.  The Department

conducted concurrent reviews of the two CN applications and subsequently denied Signature's

application but approved Springstone's application.

Signature filed a petition for administrative review.  Springstone intervened to defend the

Department's decision.  Signature and Springstone both moved for summary judgment.  The

Department issued a final order granting Springstone's motion for summary judgment and

denying Signature's motion.  The Department concluded that Signature failed to meet its burden

No. 50109-1-II

of proving the financial feasibility and cost containment of its proposed hospital and that Springstone met all relevant CN application requirements.

Signature appeals, arguing that the Department erroneously denied its application because the Department misinterpreted and misapplied the application form and that the Department's decision was arbitrary and capricious. Signature also argues that there are genuine issues of material fact concerning Springstone's CN application and that the Department's decision to grant Springstone's CN application was arbitrary and capricious.[1] We disagree and affirm the Department's final order.

FACTS

I. BACKGROUND

A.      *The CN Application Process*

The State Health Planning and Resources Development Act, chapter 70.38 RCW, regulates the number of "healthcare" providers entering the market. *Univ. of Wash. Med. Ctr. v. Dep't of Health*, 164 Wn.2d 95, 99, 187 P.3d 243 (2008). Healthcare providers may open certain healthcare facilities only when the Department issues the provider a CN. RCW 70.38.105. The provider must submit an application to the Department to begin the CN review process. WAC 246-310-090(1)(a). After a CN application is submitted to the Department, the Department screens the application to determine whether it is complete. WAC 246-310-090(2)(a). If the Department determines that the application is incomplete, the Department issues a screening

---

[1] If the Department denies a CN application, the applicant has the right to an adjudicative proceeding. *King County Pub. Hosp. Dist. No. 2 v. Dep't of Health*, 178 Wn.2d 363, 366, 309 P.3d 416 (2013). A competing healthcare facility is provided an opportunity to present oral or written testimony and argument in the adjudicative proceeding. 178 Wn.2d at 366.

2

letter to the applicant that includes a request for supplemental information. WAC 246-310-090(2).

The Department concurrently reviews CN applications for proposed facilities that are competing to provide services in the same planning area. *DaVita HealthCare Partners, Inc. v. Dep't of Health*, 192 Wn. App. 102, 107, 365 P.3d 1283 (2015). When considering a healthcare provider's CN application, the Department considers the need for the proposed hospital, the financial feasibility of the hospital, and containment of the costs. RCW 70.38.115(2)(a), (c); WAC 246-310-200(1). If the Department denies a healthcare provider's CN application, the provider has the right to an adjudicative proceeding. RCW 70.38.115(10)(a).

The Department's CN application form provides that a healthcare provider must have sufficient interest in the proposed hospital. To demonstrate sufficient interest, the provider must present documentation of (1) clear legal title for the proposed hospital, (2) a lease for at least five years with options to renew for no less than a total of 20 years, or (3) a legally enforceable agreement to give such title or such lease in the event that a CN is issued for the proposed hospital. The Department's CN application also contains a provision requiring "[c]opies of each lease or rental agreement related to the proposed [hospital]." Administrative Record (AR) at 1848.

B.      *Signature's and Springstone's Clark County CN Applications*

On November 5, 2014, Signature filed a CN application to build a 100-bed psychiatric hospital in Clark County. Signature's application provided that its proposed psychiatric hospital, Vancouver Behavioral Healthcare Hospital, would lease its facilities from Vancouver Life Properties LLC and pay approximately $2 million in rent to Vancouver Life Properties each

3

year. Signature's application did not include a lease agreement or documentation regarding the length of the lease. Instead, Signature supplemented its application with a purchase and sale agreement.

Signature purchased the property on which Vancouver Life Properties would build the hospital facility. Vancouver Life Properties would own the hospital facility and would lease the facility to Vancouver Behavioral Healthcare Hospital. Both Signature and Vancouver Life Properties are entirely owned by Dr. Soon K. Kim. Signature has a 100 percent ownership interest in Vancouver Behavioral Healthcare Hospital.

The Department screened Signature's CN application to determine whether it was complete and issued a screening letter. *See* WAC 246-310-090(2)(a). In the screening letter, the Department requested that Signature identify the lease costs for its proposed hospital. Signature did not supply the requested information. Later, the Department sent Signature a second screening letter, requesting a copy of the lease agreement between Vancouver Life Properties, the lessor, and Vancouver Behavioral Healthcare Hospital, the lessee. In response, Signature provided a draft lease agreement for a five-year lease and no option to renew the lease. The draft lease agreement did not include Vancouver Behavioral Healthcare Hospital's annual or monthly lease costs.

On December 29, Springstone filed a CN application on behalf of Rainier Springs LLC for a 72-bed psychiatric hospital in the same planning area as Signature. Springstone's proposed psychiatric hospital included a 24-bed chemical dependency unit. The beds in the chemical dependency unit were to be licensed as psychiatric beds, and the unit would have the ability to treat patients with dual diagnoses or co-occurring disorders.

4

The Department screened Springstone's application and sent a screening letter requesting that Springstone clarify the identity of the CN applicant and provide Rainier Springs's draft lease agreement. Springstone clarified that Rainier Springs was entirely owned by Springstone Inc., which was entirely owned by Springstone LLC. Springstone also stated that Rainier Springs would be entirely funded by Welsh, Carson, Anderson & Stowe (WCAS), an equity investment firm. In addition, Springstone supplied a draft lease agreement for a 10-year term with the option to renew the lease for two additional five-year terms. The draft lease agreement also included Rainier Springs's annual and monthly lease costs.

The Department then concurrently reviewed Signature's and Springstone's CN applications. On September 23, 2015, the Department denied Signature's CN application. The Department reasoned that Signature failed to demonstrate that its proposed hospital was financially feasible and that it would foster containment of healthcare costs because Signature failed to provide documentation of a lease with a 20-year total term and because Signature's draft lease agreement did not contain Vancouver Behavioral Healthcare Hospital's monthly and annual lease costs.

That same day, the Department conditionally approved Springstone's CN application.[2] The Department determined that because Springstone LLC was the ultimate parent company of Rainier Springs, Springstone LLC was the true CN applicant. The Department also concluded that although WCAS would provide 100 percent of the capital investment for Springstone's proposed hospital, financial investment companies are neither a parent company nor an

---

[2] The Department notified Springstone that it would not issue the CN until the Department received a copy of an approved conditional use permit for Springstone's proposed psychiatric hospital.

applicant. The Department ultimately concluded that Springstone established the need for its proposed hospital, the financial feasibility of the hospital, and containment of the project's costs.

C.      *Signature's Pierce County & Spokane County CN Applications*

Signature also submitted a CN application in Pierce County in 2014. When the Department reviewed the applications submitted in Pierce County, it declared a pivotal unresolved issue (PUI) because all CN applications submitted were deficient, and the Department could not move forward with its review. As a result, the Department requested additional information from Signature and extended the review period. The Department later denied Signature's Pierce County CN application and granted the competing healthcare facility's CN application. The competing facility's application provided that it would own the site of its proposed hospital and that it had clear legal title to that site.

Signature also submitted a CN application for a proposed psychiatric hospital in Spokane County. The Department also denied Signature's Spokane County CN application.

## II. PROCEDURE

Signature filed a Request for Adjudicative Proceeding to appeal the Department's decision to approve Springstone's CN application and deny Signature's application. Springstone intervened to defend the Department's decision. Springstone then filed a motion for summary judgment, contending that there were no genuine issues of material fact concerning the deficiencies in Signature's application or the integrity of Springstone's application. Signature filed a cross-motion for summary judgment, arguing that there were genuine issues of material fact regarding Springstone's application and that Signature was entitled to judgment as a matter of law because it demonstrated sufficient interest in its proposed hospital.

The Department issued an initial order, granting Springstone's motion for summary judgment and denying Signature's cross-motion. Signature filed a petition for administrative review of the initial order. The Department then issued its final order. The Department granted Springstone's motion for summary judgment, determining that Signature failed to meet its burden in showing the financial feasibility and cost containment of its proposed psychiatric hospital and that there were no genuine issues of material fact concerning Springstone's CN application. The Department denied Signature's cross-motion for summary judgment on the same basis.

First, the Department determined that there were no genuine issues of material fact concerning the true applicant for Springstone's CN application. The Department reasoned that only Springstone was the true applicant because Springstone was the parent company of Rainier Springs and owned Rainier Springs and related entities in their entirety. The Department also noted that WCAS was not an applicant to the proposed Rainier Springs project because it provided only funding for the project.

In addition, the Department concluded that there was no genuine issue of material fact regarding Springstone meeting the CN application requirements. The Department reasoned that Springstone provided a proper methodology for determining the need for psychiatric beds in Clark County. The Department determined that because all 72 beds in Springstone's proposed hospital would operate as psychiatric beds, the 24-bed chemical dependency unit did not reduce

the number of beds available to the public. As a result, the Department reasoned that the chemical dependency unit did not require a separate need methodology.[3]

The Department also determined that there was no genuine issue of material fact regarding Signature's lack of sufficient interest in its proposed psychiatric hospital because Signature failed to comply with the Department's requirements. First, the Department determined that Signature failed to establish sufficient interest in its proposed hospital because it provided documentation of only a five-year lease. The Department reasoned that because Vancouver Behavioral Healthcare Hospital would lease its facilities, Signature could not demonstrate sufficient interest unless it provided documentation of a legally enforceable agreement establishing a 20-year total term lease. Moreover, the Department determined that the fact that Dr. Kim had full ownership of both Signature and Vancouver Life Properties did not establish Signature's sufficient interest in Vancouver Behavioral Healthcare Hospital.

The Department also determined that Signature failed to establish sufficient interest in its proposed hospital because it did not provide a lease agreement that included Vancouver Behavioral Healthcare Hospital's annual and monthly lease costs. The Department reasoned that a draft lease agreement containing lease costs was necessary to determine whether Signature's proposed hospital would have an impact on the cost and charges of healthcare and be financially feasible. Additionally, because Signature could not demonstrate the financial feasibility of its

---

[3] The Department's CN application requires that applicants complete a mathematic methodology to calculate the unmet need for a proposed facility in a given planning area. *See Odyssey Healthcare Operating B, LP v. Dep't of Health*, 145 Wn. App. 131, 144, 185 P.3d 652 (2008). The Department also considers the population to be served and the services to be offered when evaluating the need for a proposed facility. WAC 246-310-210(1).

project, the Department concluded that Signature could not establish that the costs of the project were contained.

Signature petitioned for judicial review of the Department's final order denying its CN application in the Thurston County Superior Court. The Department subsequently petitioned this court for direct review of the final order. A commissioner of this court granted the Department's petition. Ruling Accepting Direct Review, *Signature Healthcare Servs., LLC v. Dep't of Health, et al.*, No. 50109-1-II, at 2 (Wash. Ct. App. May 26, 2017).

ANALYSIS

Signature argues that the Department erroneously denied its CN application because the Department misinterpreted and misapplied the application form and because the Department's decision was arbitrary and capricious. Signature also argues that there is a genuine issue of material fact concerning the true applicant in Springstone's CN application, there is a genuine issue of material fact regarding whether Springstone provided an appropriate need methodology in its CN application, and the Department's decision to grant Springstone's CN application was arbitrary and capricious. We disagree.

I. LEGAL PRINCIPLES

An appeal of the denial of a CN application is governed by the Administrative Procedure Act (APA), chapter 34.05 RCW. RCW 70.38.115(10)(a); *King County Pub. Hosp. Dist. No. 2 v. Dep't of Health*, 178 Wn.2d 363, 371-72, 309 P.3d 416 (2013). The Department's decision is presumed correct, and the party challenging the Department's decision bears the burden of showing that the Department's action is invalid. *Univ. of Wash. Med. Ctr.*, 164 Wn.2d at 102-03.

9

Under the APA, we may grant relief from an invalid agency action only in limited circumstances. RCW 34.05.570(1)(b); *DaVita HealthCare Partners*, 192 Wn. App. at 113. We may grant relief where the Department engaged in unlawful procedure or erroneously interpreted or applied the law. RCW 34.05.570(3)(c)-(d). We may also grant relief when the Department's decision is arbitrary and capricious. RCW 34.05.570(3)(i). A decision is arbitrary and capricious when it is the result of willful and unreasoning disregard of the facts and circumstances. *King County Pub. Hosp. Dist. No. 2*, 178 Wn. App. at 372.

Where, as here, the administrative decision was on summary judgment, we overlay the APA standard of review with the summary judgment standard of review. *Verizon Nw., Inc. v. Emp't Sec. Dep't*, 164 Wn.2d 909, 916, 194 P.3d 255 (2008). In reviewing summary judgment, we evaluate the facts in the administrative record de novo and in the light most favorable to the nonmoving party. 164 Wn.2d at 916. We review the Department's legal conclusions under the APA's "error of law" standard, which allows us to substitute our view of the law for that of the Department. 164 Wn.2d at 916. "Summary judgment is appropriate only where the undisputed facts entitle the moving party to judgment as a matter of law." 164 Wn.2d at 916.

## II. THE DEPARTMENT CORRECTLY APPLIED THE LAW

Signature argues that the Department misinterpreted and misapplied the law in denying its CN application. Specifically, Signature argues that because the Department interpreted the CN application form in the conjunctive instead of the disjunctive, the Department misapplied the law in determining that Signature was required to provide a 20-year lease to establish sufficient interest in its proposed psychiatric hospital. We disagree.

10

A.      *Sufficient Interest in the Proposed Hospital*

Signature argues that tenets of statutory interpretation apply to the Department's CN application form, which is derived from a Department rule that is based on a statute.  However, Signature does not cite a statute or rule for this court to interpret.  We do not use statutory interpretation principles to determine the meaning of the Department's form.

Under RCW 70.38.115(6), the Department must specify the information that is required in a CN application.  Those submitting a CN application must submit the application "in such form and manner and containing such information as the [D]epartment has prescribed and published as necessary to such a [CN] application."  WAC 246-310-090(1)(a).  "'An agency acting within the ambit of its administrative functions normally is best qualified to interpret its own rules, and its interpretation is entitled to considerable deference by the courts.'"  *D.W. Close Co., Inc. v. Dep't of Labor & Indus.*, 143 Wn. App. 118, 129, 177 P.3d 143 (2008) (quoting *Pac. Wire Works, Inc. v. Dep't of Labor & Indus.*, 49 Wn. App. 229, 236, 742 P.2d 168 (1987)).

RCW 70.38.115(6) clearly provides that the Department may require whatever information it deems reasonably necessary to review a CN application.  Because the Department acts within the scope of its administrative functions in assessing CN applications, we give the Department deference in construing the requirements of its CN application form.  *See D.W. Close Co.*, 143 Wn. App. at 129.  We do not use principles of statutory interpretation to determine the meaning of the Department's CN application form.  Instead, we review the Department's application of the form requirements to Signature's CN application.

The Department's CN application form states:

Provide documentation that the applicant has sufficient interest in the site or facility proposed. Sufficient interest shall mean one of the following:
    (a) Clear legal title for the proposed site; or
    (b) Lease for at least five years with options to renew for no less than a total of twenty years in the case of a hospital or psychiatric hospital . . . or
. . . .
    (d) Legally enforceable agreements to give such title or such lease in the event that a Certificate of Need is issued for the proposed [hospital].

AR at 1821-22.

The facts involving Signature's CN application are undisputed. Signature's CN application provided that its proposed psychiatric hospital, Vancouver Behavioral Healthcare Hospital, would lease its facilities from Vancouver Life Properties and that Vancouver Life Properties would own the hospital facility. Signature's application contained only a purchase and sale agreement for Signature's purchase of the property that would later house Vancouver Behavioral Healthcare Hospital's leased facilities.

Upon review, the Department determined that Signature's application was incomplete and requested a copy of the lease agreement between Vancouver Life Properties and Vancouver Behavioral Healthcare Hospital. Signature provided a draft lease agreement for a five-year term and no option to renew the lease. Because Vancouver Life Properties would own the proposed facilities, the Department concluded that "[t]he only way that Signature Healthcare Services LLC (the applicant) can exercise [sufficient interest] is by leasing the facility from Vancouver Life Properties LLC." Clerk's Papers (CP) at 48. The Department also concluded that Signature failed to provide a 20-year lease agreement. As a result, the Department determined that there was no genuine issue of material fact regarding Signature's lack of sufficient interest and granted Springstone's summary judgment motion.

12

Viewing the undisputed facts in this case and viewing Signature's CN application in the same manner as the Department, we hold that Signature failed to provide the documentation required to demonstrate sufficient interest in its proposed psychiatric hospital. The Department's CN application form instructed Signature to provide documentation of clear legal title, a lease with options to renew for no less than a 20-year total term, or legally enforceable agreements regarding the title or lease. Although Signature provided a purchase and sale agreement for the land on which its proposed hospital would be built, Vancouver Behavioral Healthcare Hospital did not have clear title to the proposed hospital because it did not own the hospital facility.[4] Instead, Signature's application stated that Vancouver Behavioral Healthcare Hospital would lease the facility from Vancouver Life Properties. Because Signature provided that its proposed hospital would lease its facilities, the Department requested that Signature provide documentation regarding a lease with a 20-year total term. Consequently, Signature was required to provide documentation of a 20-year lease to demonstrate sufficient interest, but Signature provided a lease agreement with only a five-year total term.

Signature failed to demonstrate sufficient interest in its proposed hospital because it failed to provide documentation of a 20-year lease. Accordingly, Signature fails to meet its burden in showing that the Department misapplied the law, and Signature is not entitled to judgment as a matter of law. Thus, Signature's argument fails.

---

[4] Signature also argues that it established sufficient interest in its proposed psychiatric hospital when it provided the purchase and sale agreement because Dr. Kim entirely owns both Signature and Vancouver Life Properties, and Signature owns Vancouver Behavioral Healthcare Hospital in its entirety. Signature contends that because Dr. Kim entirely owns all entities involved, it demonstrated that Vancouver Behavioral Healthcare Hospital had clear legal title to the proposed site. Despite this, the purchase and sale agreement provides that only Signature has title to the proposed site. Accordingly, Signature's argument fails.

B.     *Providing a Draft Lease Agreement*

Signature appears to argue that the Department misapplied the law by requiring that

Signature provide a draft lease agreement with the annual and monthly lease costs Vancouver

Behavioral Healthcare Hospital would pay.  Signature conflates the Department's CN application

form requirement of providing documentation regarding sufficient interest in the proposed

hospital and the Department's requirement of providing a draft lease agreement that includes

annual and monthly lease costs.  The Department and Springstone respond to Signature's

argument that the Department misinterpreted the CN application by arguing that the

Department's action in requiring a draft lease was proper because a draft lease agreement,

including lease costs, was necessary to establish the financial feasibility of Signature's proposed

hospital under RCW 70.38.115(2).  We determine that the Department properly applied the law

in requiring a draft lease agreement that included lease costs.

Under WAC 246-310-090(1)(a), an applicant submitting a CN application must submit

the application "in such form and manner and containing such information as the [D]epartment

has prescribed and published as necessary to such a [CN] application."  An applicant must also

demonstrate that its proposed hospital is financially feasible.  *See* WAC 246-310-200(1).  To

demonstrate financial feasibility, the applicant must show that the immediate and long-range

capital and operating costs of the proposed hospital will be met.  WAC 246-310-220(1).  In

addition, the applicant must show that the costs of its proposed hospital will not result in an

unreasonable impact on the costs and charges for healthcare services.  WAC 246-310-220(2).

The Department's CN application contains a provision requiring "[c]opies of each lease

or rental agreement related to the proposed [hospital]."  AR at 1848.  When Signature submitted

its CN application, it provided that Vancouver Behavioral Healthcare Hospital would lease its facilities from Vancouver Life Properties. Signature's application stated that it would pay approximately $2 million in rent each year, but the application did not include a lease agreement.

The Department screened Signature's CN application and requested that Signature provide the monthly and annual lease costs of its proposed hospital. Signature did not supply any additional information. The Department sent Signature a second screening letter, requesting a copy of the lease agreement between Vancouver Behavioral Healthcare Hospital and Vancouver Life Properties. Signature provided a draft lease agreement, but the agreement did not include the amount of rent Vancouver Behavioral Healthcare Hospital would owe each month or each year.

The Department concluded that the need for a "draft lease is one factor in deciding if the project will have an impact on the costs and charges for health services." CP at 50. The Department also concluded that the Department could not evaluate whether Signature's proposed hospital would have an impact on the cost of healthcare without knowing Vancouver Healthcare Hospital's lease costs. As a result, the Department determined that there was no genuine issue of material fact regarding Signature's failure to demonstrate financial feasibility and granted Springstone's motion for summary judgment.

The Department's application form clearly requires that an applicant submit a copy of a lease agreement for a proposed hospital. The Department requires a copy of a lease agreement that includes annual and monthly lease costs to determine whether a proposed hospital is financially feasible. Signature failed to demonstrate the financial feasibility of its proposed psychiatric hospital because it did not provide the monthly or annual lease costs for Vancouver

15

Behavioral Healthcare Hospital. Because Signature did not provide a draft lease agreement with the lease costs, it did not show that the capital and operating costs of the hospital would be met or that the costs of its proposed hospital would not have an impact on healthcare costs. As a result, Signature failed to submit a CN application that contained the information required by the Department. Accordingly, Signature fails to show that the Department misapplied the law in denying Signature's CN application for failing to demonstrate financial feasibility. Therefore, Signature is not entitled to judgment as a matter of law.

III. THE DEPARTMENT'S DENIAL OF SIGNATURE'S APPLICATION WAS NOT ARBITRARY & CAPRICIOUS

Signature also argues that the Department's decision to deny its CN application was arbitrary and capricious when compared to the Department's review of Signature's CN applications for proposed facilities in Pierce County and Spokane County because the Department maintained varying standards in reviewing the applications. Specifically, Signature argues that the Department's review of Signature's Clark County CN application was arbitrary and capricious because Signature submitted a 20-year lease, while the competing healthcare facility submitted a 15-year lease, the Department declared a PUI in Pierce County, and Signature was not required to provide a draft lease agreement as part of its Spokane County application. We determine that the Department's denial was not arbitrary and capricious when compared to its review of Signature's CN application in Pierce County, but we do not review Signature's argument concerning the Department's review in Spokane County.

16

A.    *Pierce County*

Signature argues that the Department's decision to deny its CN application was arbitrary and capricious when compared to the Department's review of its application for proposed facilities in Pierce County because Signature submitted a lease with a 20-year term, while the competing healthcare facility submitted a 15-year lease, and because the Department declared a PUI during the Pierce County review but not during the Clark County review. We disagree.

In 2014, Signature submitted CN applications in both Clark County and Pierce County. During its review of the Pierce County applications, the Department declared a PUI. The Department declared a PUI because it was unable to move forward in concurrently reviewing all CN applications in Pierce County due to deficiencies in each of the applications submitted. Because the Department declared a PUI, it was permitted to request additional information, and it extended its review period. WAC 246-310-090(1)(a)(iii). The Department eventually denied Signature's Pierce County CN application and granted the competing healthcare facility's application. The competing facility's application provided that it would own the site of its proposed hospital and had clear legal title to that site.

The Department also denied Signature's Clark County CN application, determining that Signature failed to show that its proposed hospital was financially feasible and that the costs of the proposed hospital would be contained. Specifically, the Department reasoned that Signature could not show either financial feasibility or cost containment because Signature failed to provide documentation of a 20-year total lease term for the Clark County proposed hospital and because Signature failed to supply a draft lease agreement with the proposed hospital's monthly and annual lease costs. The Department did not declare a PUI during its review of Signature's

17

Clark County CN application because only Signature's CN application was deficient—Springstone's CN application was complete.

Signature contends that the Department maintained varying standards in reviewing its CN applications in Clark County and Pierce County because Signature submitted a lease with a 20-year term, while the competing healthcare facility submitted a 15-year lease, and because the Department did not declare a PUI during its review of the Clark County application. Signature's argument fails.

The Department declared a PUI in reviewing the Pierce County applications because none of the CN applications submitted were complete. These circumstances were not present during the Department's review of the Clark County applications because Springstone submitted a sufficient application. Moreover, our review of the administrative record reveals that the competing healthcare facility in Pierce County owned its proposed psychiatric hospital and had clear legal title to the proposed site. Because the competing facility had clear title, it was not required to submit a 20-year lease. Here, Vancouver Behavioral Healthcare Hospital does not own its own facilities and does not have clear legal title.

Viewing the evidence available in our record on appeal, the Department has consistently applied its CN standards in reviewing Signature's CN application for a proposed hospital in Clark County. The Department's denial was the result of due consideration of the facts and circumstances in Signature's Clark County CN application. Accordingly, Signature fails to meet

its burden in showing that the Department's denial of its Clark County application was arbitrary and capricious.[5]  Therefore, Signature is not entitled to judgment as a matter of law.

B.      *Spokane County*

Signature argues that the Department's decision to deny its CN application was arbitrary and capricious when compared to the Department's review of its application for a proposed hospital in Spokane County because Signature was not requested to provide a draft lease agreement as part of its Spokane County application.  We do not review this issue.

Generally, an insufficient record on appeal precludes our review of alleged errors. *Cuesta v. Emp't Sec. Dep't*, 200 Wn. App. 560, 568, 402 P.3d 898 (2017).  The record on appeal does not contain any evidence regarding the requirements for Signature's CN application in Spokane County or the Department's review of Signature's application.  Moreover, there is no evidence in the record concerning whether Signature was required to submit a draft lease agreement for its Spokane County application.  As a result, the record in insufficient to review whether the Department maintained varying standards in reviewing Signature's CN applications in Clark County and in Spokane County.  Therefore, we do not review this issue.

IV.  SPRINGSTONE'S CN APPLICATION

Signature also argues that there is a genuine issue of material fact concerning the true applicant in Springstone's CN application, there are genuine issues of material fact regarding the true applicant for Springstone's CN application and whether Springstone provided an appropriate

---

[5] It appears that Signature seeks our review of the Department's actions during its review of the Pierce County CN application.  Nothing in this opinion should be read as a determination of the validity of the Department's review of Signature's CN application in Pierce County.

need methodology in its CN application, and the Department's decision to grant Springstone's

CN application was arbitrary and capricious. We disagree.

A.      *No Genuine Issue of Material Fact Regarding the True Applicants for Springstone's
        Application*

Signature argues that there is a genuine issue of material fact concerning the true

applicant in Springstone's CN application because Springstone misrepresented the facts

concerning the true applicant. Specifically, Signature argues that WCAS, Springstone LLC, and

Springstone Inc. should have been considered applicants for the proposed hospital because each

entity has an ownership interest in the proposed hospital, Rainier Springs.[6] We determine that

there is no genuine issue of material fact concerning the true applicant in Springstone's CN

application.

Springstone's CN application on behalf of Rainier Springs provided that Rainier Springs

was entirely owned by Springstone Inc., which was entirely owned by Springstone LLC.

Springstone also stated that the Rainier Springs proposed hospital would be entirely funded by

WCAS.

In its CN application review, the Department determined that Springstone LLC was the

ultimate parent company of Rainier Springs because it entirely owned all related entities.

Because Springstone LLC was the ultimate parent company, the Department decided to treat

Springstone LLC as the applicant for the proposed Rainier Springs facility. The Department also

---

[6] Signature asserts that "[i]t should be presumed that WCAS owns a 10% or greater interest" in Rainier Springs because WCAS was funding 100 percent of the Rainier Springs proposed hospital. Br. of Appellant at 32. Signature's assertion is not well taken. Even assuming all facts in Signature's favor, there is no evidence that WCAS owned any interest in Rainier Springs. *Johnson v. Recreational Equip., Inc.*, 159 Wn. App. 939, 956, 247 P.3d 18 (2011) (Appellants "cannot rely on speculation and conjecture to raise a genuine issue of material fact.").

noted that WCAS was the funding source for the proposed hospital and stated that the Department does not consider funding sources to be applicants.

In its final order, the Department determined that there were no genuine issues of material fact concerning the true applicant for Springstone's CN application. The Department reasoned that only Springstone LLC was the true applicant because Springstone LLC was the parent company of Rainier Springs, and parent companies are considered the applicant for CN application purposes.

Although Signature contends that Springstone misrepresented facts regarding the ownership interest in Rainier Springs, Signature does not provide any evidence to support this accusation. The uncontested evidence presented to the Department shows that Rainier Springs and any related entities were entirely owned by Springstone LLC. The uncontested evidence also shows that the Department treats parent companies as the true applicant in a CN application. Because Springstone LLC owns Rainier Springs in its entirety, Springstone LLC is the parent company of Rainier Springs. Accordingly, there is no genuine issue of material fact regarding the true applicant in Springstone's CN application.

B.      *No Genuine Issue of Material Fact Regarding Springstone's Need Methodology*

Signature also argues that there is a genuine issue of material fact regarding whether Springstone provided an appropriate need methodology in its CN application. Specifically, Signature argues that Springstone failed to show sufficient need for a 24-bed chemical dependency unit in its proposed hospital. We determine that there is no genuine issue of material fact regarding whether Springstone demonstrated an unmet need for its proposed hospital.

Springstone filed a CN application for a 72-bed psychiatric hospital. Springstone's CN application included its methodology for determining the number of psychiatric beds required to meet the need for care in Clark County. Springstone's application also provided that its 72-bed proposed hospital would include a 24-bed chemical dependency unit. The beds in the chemical dependency unit were to be licensed as psychiatric beds, and the unit would have the ability to treat patients with dual diagnoses or co-occurring disorders. During screening, the Department determined that Springstone's proposed hospital was a full psychiatric hospital and that the chemical dependency unit did not require a separate need methodology because the unit satisfied the need for psychiatric care in Clark County.

In its cross-motion for summary judgment, Signature argued that Springstone failed to provide a proper need methodology for the 24 chemical dependency beds. The Department determined that Signature's argument failed because Springstone provided a proper methodology for ascertaining the need for psychiatric beds in Clark County. The Department reasoned that because all 72 beds in Springstone's proposed hospital would operate as psychiatric beds, the chemical dependency unit did not reduce the number of beds available to meet the community's needs and did not require a separate need methodology.

The evidence in the administrative record shows that Springstone provided a need methodology for its 72-bed facility. Although Springstone's proposed hospital would include a chemical dependency unit, the Department determined that Springstone's facility would function as a full psychiatric hospital and did not require an additional need methodology. Signature fails to show that there is a genuine issue of material fact regarding whether Springstone provided an appropriate need methodology for its proposed hospital. Assessing a CN applicant's need

22

methodology is within the scope of the Department's administrative functions. Giving

substantial deference to the Department, we hold that there is no genuine issue of material fact

concerning Springstone's need methodology for its 24-bed chemical dependency unit.

C.      *The Department's Review of Springstone's Financial Feasibility was Not Arbitrary & Capricious*

Signature also argues that the Department's decision to grant Springstone's CN

application was arbitrary and capricious because the Department considered only the financial

feasibility of Rainier Springs and not the financial fitness of Springstone or WCAS.[7] Signature

contends that the Department did not apply the same standard in reviewing its CN application

because the Department reviewed the financial feasibility of both Signature and Vancouver

Behavioral Healthcare Hospital. We disagree.

When conducting its concurrent review of both Signature's and Springstone's CN

applications, the Department reviewed the capital and operating costs of only Vancouver

Behavioral Healthcare Hospital and Rainier Springs. The Department also reviewed whether

each hospital could be appropriately financed. The proposed Vancouver Behavioral Healthcare

Hospital facility was funded in part by Signature, and Signature provided its current and

historical financial statements to demonstrate that it had the funds to support financing its

---

[7] Signature also argues that Springstone failed to establish the containment of the costs of its proposed hospital because Springstone failed to establish that its project was financially feasible. Under RAP 10.3(a)(6), an appellant's brief must include arguments supporting the issues presented for review and citations to legal authority. An appellant waives an assignment of error that is unsupported by argument or authority. *Bercier v. Kiga*, 127 Wn. App. 809, 824, 103 P.3d 232 (2004). Signature does not provide an analysis regarding Springstone's failure to establish cost containment and does not cite any authority. Because Signature's brief does not contain argument and authority concerning this issue, we determine that this issue is precluded from our review.

proposed hospital. Springstone's proposed Rainier Springs facility was funded entirely by WCAS, and Springstone submitted independent auditor's reports regarding WCAS to demonstrate funding.

Contrary to Signature's assertion, the Department assessed the financial feasibility of only Signature's project, Vancouver Behavioral Healthcare Hospital. Similarly, the Department assessed the financial feasibility of only Rainier Springs. The Department reviewed Signature's financial information only to determine whether Signature could properly fund Vancouver Behavioral Healthcare Hospital. The Department similarly reviewed financial information for WCAS in assessing the financing for Rainier Springs.

As a result, Signature fails to meet its burden in showing that the Department's action in granting Springstone's application was the result of willful or unreasoning disregard for the facts and circumstances. From the record available to this court on appeal, it appears that the Department consistently applied its CN application review standards and that its decision granting Springstone's CN application was the result of due consideration of the facts and circumstances. Therefore, Signature is not entitled to judgment as a matter of law.

D. *The Department's Review of Springstone's Sufficient Interest was Not Arbitrary & Capricious*

Signature appears to argue that the Department's decision to grant Springstone's CN application was arbitrary and capricious because Springstone did not establish that it had sufficient interest in its proposed hospital. Specifically, Signature argues that Springstone failed to demonstrate sufficient interest because its CN application did not specify the cost for the renewal terms in its lease. Signature misunderstands the requirements of sufficient interest, and therefore, its argument fails.

24

To demonstrate sufficient interest in a proposed hospital, a CN applicant is required to provide documentation of:

> (a) Clear legal title for the proposed site; or
> (b) Lease for at least five years with options to renew for no less than a total of twenty years in the case of a hospital or psychiatric hospital . . . or
> . . . .
> (d) Legally enforceable agreements to give such title or such lease in the event that a Certificate of Need is issued for the proposed [hospital].

AR at 1821-22. CN applicants are not required to provide lease costs to satisfy the sufficient interest requirement. Instead, applicants must provide a lease with monthly and annual lease costs so that the Department can assess the financial feasibility of the proposed hospital.

Springstone's CN application stated that Rainier Springs would lease its facilities for a 10-year term with the option to renew the lease for an additional two years. The Department screened Springstone's application and notified Springstone that its application was incomplete because the lease did not extend for a 20-year total term. Springstone supplied the Department with a revised draft lease agreement for a 10-year term with the option to renew the lease for two additional 5-year terms. WAC 246-310-090

Springstone provided documentation of a 20-year total term lease. As a result, Springstone demonstrated sufficient interest in its proposed facilities. Accordingly, Signature fails to meet its burden in showing that the Department's action was arbitrary and capricious. Moreover, Signature is not entitled to judgment as a matter of law.

We affirm the Department's final order.

No. 50109-1-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, P.J.

We concur:

Bjorgen, J.

Sutton, J.